Robert **JAEGLY**, Jr., Plaintiff–
Appellant,

v.

Matthew **COUCH**, Bernard Santandria,
Paula Breen and City of Albany,
Defendants–Appellees.

Docket No. 05–2191–CV.

United States Court of Appeals,
Second Circuit.

Argued: Jan. 27, 2006.

Decided: Feb. 24, 2006.

Kenneth G. Varley, Donohue, Sabo, Varley & Armstrong, P.C., Albany, NY, for Plaintiff–Appellant.

John L. Shea, Saratoga Springs, NY, for Defendant–Appellee Matthew Couch.

Stephen J. Rehfuss, Rehfuss, Liguori & Associates, P.C., Latham, NY, for Defendants–Appellees Bernard Santandria, Paula Breen and City of Albany.

Before: LEVAL and SOTOMAYOR, Circuit Judges, and KRAVITZ, District Judge.*

SOTOMAYOR, Circuit Judge.

Plaintiff-appellant Robert Jaegly, Jr. ("Jaegly") appeals from a judgment of the United States District Court for the Northern District of New York (Hurd, J.), entered on March 31, 2005, that dismissed Jaegly's claims under 42 U.S.C. § 1983. In a concurrently filed summary order, we address Jaegly's claims for malicious prosecution, failure to accept a criminal complaint, and denial of his rights under New York's Freedom of Information Law. Here, we address Jaegly's claim for false arrest and hold, in accordance with *Devenpeck v. Alford,* 543 U.S. 146, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004), that a claim for false arrest will not lie so long as the arresting officer had probable cause to arrest the plaintiff for some crime.

## BACKGROUND

During the summer of 2001, Jaegly assisted his friend Joseph Norton in evicting Phillip Zeller, Jr. from Norton's home on Elk Street in Albany, New York. As a result of a confrontation between Jaegly and Zeller, during which Jaegly purported-

* The Honorable Mark R. Kravitz, United States District Judge for the District of Connecticut, sitting by designation.

ly said that he was going to "pound on" Zeller, the Albany City Court issued to Zeller a temporary order of protection against Jaegly on November 20, 2001. The protective order required, *inter alia,* that Jaegly "stay away" from Zeller and his residence, and "[r]efrain from assault, stalking, harassment, menacing, reckless endangerment, disorderly conduct, intimidation, threats or otherwise interfering with [Zeller]."

On December 5, 2001, while visiting his friend Norton, Jaegly observed a truck parked on Elk Street with a copy of the protective order pasted in its rear window. Believing this to be an improper public display of the order, Jaegly took several pictures of the vehicle and then returned to Norton's house. The truck, which belonged to Zeller, was parked directly in front of Zeller's new residence. In a sworn affidavit, Jaegly averred that at the time he took the photographs, he knew that Zeller lived somewhere on Elk Street, but not which house.

Zeller spotted Jaegly taking pictures of the truck. Zeller thought that Jaegly was also photographing his front door and that Jaegly may have seen him through a window shade. Zeller then called the police to inquire whether Jaegly was violating the protective order. When Officer Couch responded to Zeller's complaint, Zeller told Couch that he "feared for his safety" and that he "felt threatened" by Jaegly's actions. After interviewing Zeller and reviewing the protective order, Couch questioned Jaegly at Norton's house. Jaegly admitted that he had taken pictures of Zeller's truck, but denied photographing any house. Couch arrested Jaegly for criminal contempt in the first degree and harassment in the second degree. The first charge was later reduced by the prosecutor to criminal contempt in the second

degree, and both charges were ultimately dismissed on the merits at trial.

Jaegly subsequently brought this action under § 1983 claiming, *inter alia,* that Officer Couch had falsely arrested him in violation of the Fourth Amendment. The district court granted Couch's motion for summary judgment after concluding that Couch had probable cause to arrest Jaegly on both charges. This timely appeal followed.

## DISCUSSION

### I. Standard of Review

██ We review the district court's grant of summary judgment *de novo,* affirming only if the moving party has demonstrated that there is no genuine issue as to any material fact and that judgment as a matter of law is warranted. *See, e.g., Make the Rd. by Walking, Inc. v. Turner,* 378 F.3d 133, 142 (2d Cir.2004); *see also* Fed.R.Civ.P. 56(c). In determining whether a case presents triable issues of fact, we, like the district court, may not make credibility determinations or weigh the evidence, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and we must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party, *see Konits v. Valley Stream Cent. High Sch. Dist.,* 394 F.3d 121, 124 (2d Cir.2005).

### II. False Arrest

██ Jaegly's § 1983 claim for false arrest derives from his Fourth Amendment right to remain free from unreasonable seizures, which includes the right to remain free from arrest absent probable cause. *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). "In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred." *Davis v. Rod-*

*riguez,* 364 F.3d 424, 433 (2d Cir.2004). Under New York law, the existence of probable cause is an absolute defense to a false arrest claim. *See Weyant,* 101 F.3d at 852. An officer has probable cause to arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Id.; see also Dunaway v. New York,* 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). On this appeal, we must determine whether a reasonable juror could believe that Officer Couch lacked probable cause to arrest Jaegly for criminal contempt in the first degree, pursuant to New York Penal Law § 215.51(b)(v) (McKinney 1998 & Supp.2005), or harassment in the second degree, pursuant to New York Penal Law § 240.26(3) (McKinney 1999).

Under New York law, a person is guilty of criminal contempt in the first degree when, in violation of an order of protection, he or she, "with intent to harass, annoy, threaten or alarm a person for whose protection such order was issued, strikes, shoves, kicks or otherwise subjects such other person to physical contact or attempts or threatens to do the same." N.Y. Pen. Law § 215.51(b)(v). In determining whether probable cause existed to arrest Jaegly on this charge, Couch could properly rely upon Zeller's allegation that a crime had been committed. *See Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000). Zeller, however, did not assert that Jaegly had subjected him to any physical contact, or that Jaegly had attempted to do so. Thus, at no time did Couch possess any evidence or allegations that Jaegly used or attempted to use physical force against Zeller, and the only possible basis for believing that Jaegly had committed the crime of first degree criminal contempt

was that Jaegly had threatened Zeller with physical harm. Although Zeller told Couch that he feared for his safety and felt threatened by Jaegly's actions, Zeller alleged only that Jaegly had taken pictures of his truck and his house, and that Jaegly may have seen him through a window shade.

The cases addressing first degree criminal contempt under New York law involve more direct threats of physical harm than were present in this case. *See, e.g., People v. Franklin,* 305 A.D.2d 613, 760 N.Y.S.2d 511 (3d Dept. 2003) (upholding conviction under § 215.51(b)(v) where defendant cocked his fist at the victim, verbally threatened her, and threw a piece of asphalt at her car); *People v. Orbaker,* 302 A.D.2d 977, 754 N.Y.S.2d 492 (4th Dept. 2003) (affirming conviction under § 215.51(b)(v) where defendant, in court, threatened to kill his former girlfriend and spat at her); *see also Fulton v. Robinson,* 289 F.3d 188, 195 (2d Cir.2002) (finding that probable cause existed to arrest plaintiff for criminal contempt in the first degree when the § 1983 plaintiff had purportedly threatened to kill his estranged wife and to burn her house down). It is a close question whether Couch had probable cause to arrest Jaegly for first degree criminal contempt for threatening Zeller with physical harm. We need not make that determination, however, because no reasonable juror could conclude that Couch lacked probable cause to arrest Jaegly for second degree harassment. ·

■ Under New York law, "[a] person is guilty of harassment in the second degree when, with intent to harass, annoy or alarm another person ... [h]e or she engages in a course of conduct or repeatedly commits acts which alarm or seriously annoy such other person and which serve no legitimate purpose." N.Y. Pen. Law

§ 240.26(3). Based on Zeller's representations and Jaegly's partial corroboration of Zeller's story, a reasonable jury could not find that Couch lacked probable cause to arrest Jaegly for intentionally acting to harass, annoy, or alarm Zeller with no legitimate purpose. Although Jaegly claimed that he had a valid explanation for his actions, Couch was not required to explore and eliminate every plausible claim of innocence before making an arrest. *Caldarola v. Calabrese,* 298 F.3d 156, 167–68 (2d Cir.2002). Given the pair's history as revealed by the protective order, Zeller's description of the events, and Jaegly's admission that he had taken pictures of Zeller's truck, no reasonable juror could find that Couch lacked probable cause to conclude that Jaegly was intentionally harassing Zeller.

The Supreme Court recently held that the probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest. *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). The Court thus rejected the view that probable cause to arrest must be predicated upon the offense invoked by the arresting officer, or even upon an offense "closely related" to the offense invoked by the arresting officer, and stated that the "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." [1] *Id.; see also United States v. Jones,* 432 F.3d 34, 41 (1st Cir.2005) ("[T]he probable cause inquiry is not necessarily based upon the offense actually invoked by the arresting officer but upon whether the facts known at the time of the arrest objectively provided probable cause to arrest."); *Wright v. City of Philadelphia,* 409 F.3d 595, 603–04 (3d Cir.2005) (noting that it is irrelevant to

---

**1.** The Supreme Court resolved a circuit split in *Devenpeck* by addressing the circumstances in which an arrest is lawful even though none of the crimes identified by the arresting officer at the time of arrest are supported by probable cause. There was an apparent consensus among the courts of appeals before *Devenpeck,* however, that an arrest is lawful if one charged crime on which a suspect is arrested is supported by probable cause, even if other charged crimes are not supported by probable cause. *See Lyons v. City of Xenia,* 417 F.3d 565, 573 (6th Cir.2005) ("To the extent probable cause exists for any one of the[ ] charges, the arrest was lawful . . . ."); *Price v. Roark,* 256 F.3d 364, 369 (5th Cir. 2001) ("Claims for false arrest focus on the validity of the arrest, not on the validity of each individual charge made during the course of the arrest."); *Barry v. Fowler,* 902 F.2d 770, 773 n. 5 (9th Cir.1990) (noting that an officer need only show probable cause for one of the charged offenses for a seizure to be constitutional, even if the defendant was arrested for more than one offense); *Edwards v. City of Philadelphia,* 860 F.2d 568, 576 (3d Cir.1988) ("The existence of probable cause [with respect to one charge] . . . justified the arrest—and defeats [plaintiff's] claim of false

arrest—even if there was insufficient cause to arrest on the aggravated assault claim alone."); *cf. Linn v. Garcia,* 531 F.2d 855, 862 (8th Cir.1976) ("[W]hen a peace officer has probable cause to believe that a person is committing . . . [an] offense, he is justified in arresting that person, and it is immaterial that the officer may have thought, without probable cause, that the defendant was committing or had committed other offenses as well."). New York courts had gone further and explicitly held an arrest to be valid so long as there was probable cause to believe that the defendant was committing some crime, and not necessarily one of the crimes identified by the arresting officer at the time of arrest. *See, e.g., Wallace v. City of Albany,* 283 A.D.2d 872, 873, 725 N.Y.S.2d 728 (3d Dep't 2001) (stating that probable cause "does not require an awareness of a particular crime, but only that some crime may have been committed"); *In re William H.,* 264 A.D.2d 676, 677, 695 N.Y.S.2d 93 (1st Dep't 1999) ("Since the police had probable cause to believe that appellant had committed a crime, they properly arrested appellant notwithstanding any error by the police concerning the correct charge to be filed." (citations omitted)).

the probable cause analysis what crime a suspect is eventually charged with, and finding no constitutional violation where probable cause supported one of the four charges on which the defendant was arrested). In short, the Supreme Court clarified in *Devenpeck* that probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest," and that the probable cause inquiry is objective rather than subjective. 543 U.S. at 152–53, 125 S.Ct. 588.

■ Following *Devenpeck*, we conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest. Stated differently, when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge. Because the arresting officer in this case had probable cause to arrest Jaegly for the charged crime of second degree harassment, however, we need not consider whether probable cause existed for an uncharged crime.

■■ This conclusion is supported also by the kinds of damages typically available to plaintiffs who bring successful false arrest claims. A cause of action for false arrest accrues at the time of detention, *see Day v. Morgenthau*, 909 F.2d 75, 79 (2d Cir.1990), and "damages for that claim cover the time of detention up until issuance of process or arraignment, but not more. From that point on, any damages recoverable must be based on a malicious prosecution claim . . . ." W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 119, at 888 (5th ed.1984). "The plaintiff is entitled to compensation for loss of time, for physical discomfort or inconvenience, and for any resulting physical illness or injury to health. Since the injury is in large part a mental one, the plaintiff is entitled to damages for mental suffering, humiliation, and the like." *Id.* § 11, at 48; *see also Kerman v. City of New York*, 374 F.3d 93, 125 (2d Cir.2004); 32 Am.Jur.2d *False Imprisonment* § 148 ("[A]n action for false imprisonment redresses the violation of plaintiff's freedom of movement and not freedom from unjustifiable litigation . . . ."). A plaintiff can be said to suffer these damages only if the arrest itself, and not any individual charge, is not supported by probable cause. Thus, all of the compensable damages in a successful false arrest claim stem from injuries associated with the detention itself, and not with the individual charges.

We thus hold, following *Devenpeck*, that a plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest. Because we conclude that Officer Couch did not violate Jaegly's constitutional rights by arresting him on the charge of second degree harassment, we need not consider whether Couch would be entitled to qualified immunity on this claim.

## CONCLUSION

For the foregoing reasons, and those stated in the concurrently filed summary order, we AFFIRM the judgment of the district court.