Dominick **ESPADA**, Plaintiff,

v.

**P.O. Donald SCHNEIDER, Shield No. 12173, P.O. Alvaro Miranda, Shield No. 27467, P.O. "John Doe" Nos. 1–6 and The City of New York, Defendants.**

**05 Civ. 7790(NRB).**

United States District Court, S.D. New York.

Nov. 7, 2007.

Alan D. Levine, Alan D. Levine, Esq., Kew Gardens, NY, for Plaintiff.

David M. Hazan, New York City Law Depart., Office of the Corporation Counsel, New York, NY, for Defendants.

### MEMORANDUM AND ORDER

NAOMI REICE BUCHWALD, District Judge.

Plaintiff Dominick Espada ("Espada" or "plaintiff") brings this action pursuant to 42 U.S.C. § 1983 and the common law of New York against Police Officers Donald Schneider ("Schneider" or "Officer Schneider"), Alvaro Miranda ("Miranda" or "Officer Miranda"), John Does 1–6, and the City of New York ("City" and collectively "defendants") asserting claims for false arrest, malicious prosecution, excessive force, assault and battery arising out of Espada's arrest and prosecution for assault in the second degree.[1]

Defendants moved for summary judgment, arguing that: (1) there was probable cause to justify Espada's arrest; (2) Espada has failed to state all the elements of a malicious prosecution claim; (3) defendants Schneider and Miranda are entitled to qualified immunity for the false arrest and malicious prosecution claims; (4) Espada has not shown that defendants Schneider and Miranda were personally involved in the alleged use of excessive force; and (5) the excessive force claims do not rise to the level of a constitutional violation. For the reasons set forth in Section III, defendants' motion is granted in part and denied in part.

After the defendants' summary judgment motion was fully briefed, plaintiff moved for an order to show cause why the defendants should not be directed to provide him with the names of all police officers present at the time of his arrest. In Section II below, we elaborate on our reasons for denying plaintiff's motion, which we did at oral argument on the defendants' motion for summary judgment.

### I. BACKGROUND[2]

At approximately 2:30 a.m. on August 27, 2004, plaintiff Espada left the China Club, located on West 47th Street between 7th and 8th Avenue in Manhattan, and was

---

1. Plaintiff has withdrawn his claims for negligent hiring, retention, and training against the City of New York.

2. The facts set forth herein are taken from Defendants' Statement Pursuant to Local Civil Rule 56.1, the Declaration of David M. Hazan and attached exhibits, Plaintiff's Statement Pursuant to Local Civil Rule 56.1, the Declaration of Alan D. Levine and attached exhibits, and the oral argument transcript. Where facts are disputed, all reasonable inferences have been drawn in favor of plaintiff. *See Jeffreys v. City of New York*, 426 F.3d 549, 553–54 (2d Cir.2005).

walking north on 8th Avenue alongside Renzo Perez and Cynthia Lebraun, with Michael Mercado and his brother Jonathan Espada following several feet behind. Espada turned and, seeing Mercado in an argument with a group of five men and two women, doubled back to inquire into the situation. After some words were exchanged, Mercado was struck on the head with a large glass liquor bottle and attacked by two of the men in the group. Espada came to Mercado's aid and first threw one of them as i de, then punched the other in the face as he approached and wrestled him to the ground. As Renzo Perez and the other men in the group joined the fray, Espada exchanged blows with several of the attackers but was outnumbered and able to defend himself for only a short time before being thrown to the ground.

Espada alleges that a plainclothes police officer then placed a gun to the back of his head, ordered him to his knees, and asked him if he liked hitting cops. Another plainclothes officer arrived at the scene and the two officers punched and kicked Espada repeatedly, until a uniformed officer approached and ordered them to stop because there were too many witnesses. A second uniformed officer escorted Espada to a waiting patrol car, placed him in the back seat and asked him why he had assaulted a police officer. T he officer in the passenger seat of the car turned to inform Espada that he was being arrested for "Assault Two." [3] The driver then exited the vehicle, opened the rear door, and struck Espada with a nightstick or baton until the crowd of onlookers yelled for him to stop. On their way to the precinct, Espada explained that he was an emergency medical technician and would never raise his hand to an officer. The driver quickly replied that if Espada was, in fact, an emergency medical technician, he should have been assisting the officers at the scene and not fighting them. Once they arrived at the precinct, the driver slapped Espada across the face as he was being removed from the patrol car.

According to defendants Schneider and Miranda, on the night of the arrest, they were in uniform and on patrol together. Officers Schneider and Miranda testified at their depositions that they saw Espada and three other men fighting on the corner of 8th Avenue and 47th Street, surrounded by a crowd of onlookers. As Officers Miranda and Schneider approached and started to assist several other officers already at the scene, Espada punched Officer Miranda. Officer Schneider then handcuffed Espada and escorted him to a waiting patrol car, while Officer Miranda proceeded to work with the other officers to contain the melee. Officers Schneider and Miranda deny assaulting Espada but acknowledge that they were the driver and passenger who drove him to the precinct.

Later that same day, Officer Schneider conferred with Assistant District Attorney Michael Galutto and described Espada's participation in the street brawl. Galutto prepared a felony complaint charging Espada with assaulting a police officer,[4] based solely on Officer Schneider's sworn statement that he had seen Espada punch Officer Miranda in the face. Espada was released on his own recognizance on August 29, 2004 and the case was dismissed on a motion by the district attorney's office on March 21, 2005.

---

3. Under New York law, a person is guilty of Assault in the Second Degree when: (1) "[w]ith intent to cause serious physical injury to another person, he causes such injury to such person or to a third person,"; or (2) "with intent to prevent a ... police officer ... from performing a lawful duty, ... he causes physical injury to such ... police officer." N.Y. Penal L. § 120.05 et seq.

4. See supra note 3.

Espada completed a "Pre-arraignment Screening Correctional Health Services" form, dated August 27, 2004, and checked "No" with regard to whether he was sick or injured at the time of his arrest. Nine months after the incident, Espada was examined by a neurologist and an orthopedist, both of whom were recommended by his attorney, and now claims that he sustained low-grade chronic right elbow medial epicondylitis, ulnar nerve neuritis, and low-grade, left-sided sciatic neuralgia as a result of the beating by the plainclothes police officers and Officer Schneider.[5]

## II. PLAINTIFF'S RULE 56(f) ORDER TO SHOW CAUSE

On June 25, 2007, three days before oral argument on this motion for summary judgment and months after the close of discovery, Espada's counsel filed an order to show cause pursuant to Fed.R.Civ.P. 56(f) seeking an order requiring the defendants to identify all police officers present at the time of the underlying incident and staying the summary judgment motion pending decision on this motion. As noted above, we declined to sign the order to show cause at the outset of oral argument on the summary judgment motion. We briefly review the facts underlying the plaintiff's motion and our basis for denial.

Espada initially identified the plainclothes officers alleged to have beaten him as Officers Schneider and Miranda. After both officers submitted sworn declarations stating that they were in uniform on the night of the incident and that they do not match Espada's physical descriptions of

his assailants, Espada conceded that he was mistaken. He agreed with the defendants that Officers Schneider and Miranda were not the plainclothes officers who allegedly punched and kicked him, but rather the uniformed officers (respectively, driver and passenger) who drove him to the precinct. However, as of the time of oral argument on the summary judgment motion, the identities of the John Doe plainclothes officers remained unknown. Espada's Rule 56(f) motion was calculated to discover that information.

■ First, plaintiff's eleventh hour application was untimely as it was made after the close of discovery. The relief that may be afforded under Rule 56(f) is not available when summary judgment motions are made after the close of discovery, as in the instant case. See *Little v. City of New York*, No. 04 Civ. 7571, 2007 WL 1417428, at *6–7 (S.D.N.Y. May 15, 2007). After several adjournments, discovery ended on September 20, 2006 and a telephone conference was held on December 15, 2006 to resolve any outstanding discovery issues. At the conclusion of that conference a schedule for briefing defendants' summary judgment motions was set without objection from the plaintiff. Thereafter, on April 27, 2007, defendants moved for summary judgment. Plaintiff's Rule 56(f) motion was not filed until June 25, 2007. This was not only nine months after the discovery deadline, but it followed the completion of the briefing of the summary judgment motion by both sides.

■ Second, even where a Rule 56(f) motion is timely, such a motion is not

---

**5.** Medial epicondylitis is also known as golfer's elbow, typically resulting from overuse. *See* MayoClinic.com, Golfer's elbow (May 1, 2006), http://www.mayoclinic.com/health/golfers-elbow/DS00713. Ulnar neuritis, or inflammation of the ulnar nerve, may also be caused by overuse. *See* American Sports Medicine Institute, Elbow Problems, http://

www.asmi.or g/sportsmed/elbow_problems/elbow_s_s.html. Sciatic neuralgia, or sciatica, is pain radiating from the back into the buttock and leg, typically caused by the protrusion of a low lumbar intervertebral disk, but may refer to pain anywhere along the sciatic nerve. *See* Dorland's Illustrated Medical Dictionary 1609 (29th ed.2000).

intended for use: as a discovery tool by a party who has had adequate opportunity to seek or compel such information and has simply failed to do so. *See Trebor Sportswear Co. v. The Limited Stores Inc.*, 865 F.2d 506, 511 (2d Cir.1989); *Burlington Coat Factory Warehouse Corp. v. Esprit De Corp.*, 769 F.2d 919, 927–28 (2d Cir. 1985) (denying 56(f) motion when party had "ample time to pursue the discovery it now claims is essential," holding that "[a] party who both fails to use the time available and takes no steps to seek more time until after a summary judgment motion has been filed need not be allowed more time for discovery absent a strong showing of need").

It cannot be seriously disputed that plaintiff had ample opportunity to seek the discovery which was the subject of his order to show cause. This Court granted the parties three extensions of the discovery date, twice at plaintiff's request, in effect giving plaintiff over a year to conduct discovery and to apprise the Court of any disputes. The parties submitted a joint letter on October 13, 2006 summarizing their discovery disputes. This letter contained reference to plaintiff's request for the identities of the police officers at the scene (other than Officers Schneider and Miranda), without any indication of the particular significance of the request.

The letter also recited the City's efforts and lack of success in locating such information. During the December 15 telephone conference held to resolve any open disputes (the Court having been informed that some issues had been resolved), the plaintiff raised the identification issue but did not request the Court to take any action or issue any directive, and in fact, agreed to a summary judgment briefing schedule during the conference.[6] In short, plaintiff had every opportunity to seek relief from the Court but failed to do so until his untimely and improper Rule 56(f) application.

Finally, this is not a case of stonewalling. The defendants' counsel maintained that the City has been continuously unsuccessful in locating the identities of the unnamed officers, despite good faith efforts to do so. Defendants' counsel has appealed to plaintiff's counsel for suggestions of other means of seeking the information, but their efforts have, and continue to be, unavailing. Defendants were willing yet simply unable to locate the information plaintiff seeks, and given their efforts to date, there is no reason to assume that another outcome was likely in any event.

For the above reasons, plaintiff's 56(f) application for an order to show cause was denied.[7]

---

6. We note that the Court agreed at the conference to review certain records *in camera* subsequent to the conference and that two depositions were going to be taken thereafter.

7. Accordingly, the claims asserted against John Does 1–6 must be dismissed because plaintiff failed to serve them with a summons and a copy of the complaint within 120 days of filing the complaint, as required by Fed. R.Civ.P. 4(m). *See, e.g., Watkins v. Doe,* No. 04 Civ. 0138, 2006 WL 648022, at *7 (S.D.N.Y. March 14, 2006).

Any consideration of whether the claims sounding in false arrest, excessive force, as-

sault, and battery should be dismissed without prejudice is foreclosed by the fact that the statute of limitations on those causes of action has run. *See McGregor v. United States*, 933 F.2d 156, 161 (2d Cir.1991). New York law supplies the applicable statute of limitations periods—three years for § 1983 claims, *see Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir.1994), and one year for New York false arrest, malicious prosecution, assault, and battery claims. *See Bonanno v. City of Rye*, 280 A.D.2d 630, 721 N.Y.S.2d 98 (2d Dept. 2001).

Because Espada was arrested, arraigned, and released on his own recognizance in Au-

## III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must view the evidence in the light most favorable to the nonmoving party, resolving all ambiguities and drawing all justifiable inferences in favor of that party, eschewing determinations of credibility, weighing of evidence, and other functions properly left to a jury. *See Jeffreys*, 426 F.3d at 553–54. The moving party bears the burden of showing that he or she is entitled to summary judgment, and if the nonmoving party does not present evidence from which a reasonable jury could return a favorable verdict, then summary judgment is appropriate. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Golden Pac. Bancorp v. FDIC*, 375 F.3d 196, 200 (2d Cir.2004).

### B. False Arrest

■ A claim for false arrest pursued under Section 1983 arises out of plaintiff's Fourth Amendment right to be free from unreasonable seizures, "which includes the right to remain free from arrest absent probable cause." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir.2006). The Second Circuit courts analyze such allegations using the applicable tort law of the state in which the arrest occurred. *See Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir.2004) (collecting cases).

■ In order to state a claim for false arrest, the plaintiff must demonstrate that the defendant "intentionally confined [plaintiff] without his consent and without justification." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir.2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir.1996)). The existence of probable cause is a complete defense to a false arrest claim. *Jaegly*, 439 F.3d at 152. An officer has probable cause for an arrest when he or she has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has commit-

---

gust of 2004 and three years have elapsed since that time, the claims for false arrest, excessive force, assault, and battery are properly dismissed with prejudice. *See Wallace v. Kato*, —— U.S. ——, ——, 127 S.Ct. 1091, 1095, 166 L.Ed.2d 973 (2007) (holding false arrest claim under § 1983 accrues when the plaintiff appeared before the examining magistrate and was bound over for trial); *Coakley v. Jaffe*, 49 F.Supp.2d 615, 623 (S.D.N.Y. 1999) (holding false arrest claim under New York law accrues at time of release from custody); *Lettis v. U.S. Postal Service*, 39 F.Supp.2d 181, 204 (E.D.N.Y.1998) ("Causes of action for assault and battery accrue immediately upon the occurrence of the tortious act...."). The analysis differs slightly with respect to the malicious prosecution claims because federal and state law provide for the accrual of such claims when the underlying

criminal action has been conclusively terminated. *Murphy v. Lynn*, 53 F.3d 547, 548 (2d Cir.1995); *Roman v. Comp USA, Inc.*, 38 A.D.3d 751, 752, 832 N.Y.S.2d 270, 272 (2d Dept.2007). The criminal charges against Espada were dismissed on March 21, 2005. Accordingly, Espada's New York malicious prosecution claim, which became stale after March 21, 2006, is dismissed with prejudice. Though Espada is not time-barred from refilling his § 1983 malicious prosecution claim against the John Doe defendants, we do not anticipate such a claim succeeding because there is no evidence of any police officer other than Officer Schneider being involved in the prosecution.

Having resolved the claims against the John Doe defendants, the scope of our discussion of the defendants' summary judgment motion, *infra* Section III, is limited to the facts and

ted or is committing a crime." *Escalera*, 361 F.3d at 743.

The probable cause inquiry focuses on the information available to the officer at the time of arrest; an officer's subjective intent is irrelevant. *Devenpeck v. Alford*, 543 U.S. 146, 152–53, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004). Interpreting *Devenpeck*, the Second Circuit held that "a claim for false arrest turns only on whether probable cause existed to arrest a defendant, and that it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154. The propriety of the arrest turns on the existence of facts and circumstances sufficient to believe that a criminal offense has been or is being committed, and not on the validity of any charges brought subsequent to the arrest or on the officer's subjective rationale for the arrest. *Id.*

At a minimum, based on the facts known at the time of the arrest, the officers had probable cause to arrest the plaintiff for disorderly conduct. When Officers Miranda and Schneider arrived on the scene, they observed four men, including plaintiff, in a "nasty fight." Espada described in vivid detail his involvement in the melee on the street on August 27, 2004, and admitted that he was swinging at, punching, and wrestling with his opponents. There is no genuine issue of material fact as to the probable cause for Espada's arrest on a disorderly conduct charge.[8]

Though the officers' stated reason for arresting Espada was the assault on Officer Miranda and the plaintiff was eventually charged with only that offense, any remaining questions of fact as to whether Espada struck Officer Miranda cannot save Espada's false arrest claims. Since the uncontroverted evidence of Espada's involvement in the street fight supplies the requisite probable cause to arrest for disorderly conduct, *Devenpeck* and *Jaegly* are dispositive of Espada's false arrest claims. Accordingly, defendants' motion is granted as to these claims.[9]

## C. Malicious Prosecution

To prevail on a malicious prosecution claim under § 1983, a plaintiff must show a violation of his rights under the Fourth Amendment and establish the elements of a state law malicious prosecution claim. *Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir.2002). Under New York law, a plaintiff must demonstrate: "(1) that the defendant commenced or continued a criminal proceeding against him; (2) that the proceeding was terminated in the plaintiff's favor; (3) that there was no probable cause for the proceeding; and (4) that the proceeding was instituted with malice." *Kinzer v. Jackson*, 316 F.3d 139, 143 (2d Cir.2003). Defendants contend that summary judgment denying the malicious prosecution claim is appropriate because Espada will be unable to meet the

allegations pertaining to Officers Miranda and Schneider.

8. An individual may be charged with disorderly conduct when, "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof," he or she "engages in fighting or in violent, tumultuous or threatening behavior." N.Y. Penal L. § 240.20.

9. Having found that probable cause existed for the arrest, we need not reach the issue of qualified immunity. However, should a reviewing court disagree with our probable cause determination, we note that Officer Schneider would be entitled to qualified immunity because his conclusion that there was probable cause to make the arrest was objectively reasonable. *See Escalera*, 361 F.3d at 743.

first, third and fourth elements of the claim as a matter of law.

### 1. Commencement of Criminal Proceedings

■ "Although there is a presumption that a prosecutor exercises independent judgment in deciding whether to initiate and continue a criminal proceeding," *Brome v. City of New York*, No. 02 Civ. 7184 (WHP), 2004 WL 502645, at *5–6 (S.D.N.Y. Mar.15, 2004), a plaintiff may overcome that presumption be demonstrating that "the defendant played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." *DeFilippo v. County of Nassau*, 183 A.D.2d 695, 696, 583 N.Y.S.2d 283, 284 (2d Dept.1992). Applying these principles to claims against police officers, courts have found a triable issue of fact as to the initiation element where the defendant-officer brought formal charges and had the person arraigned, filled out complaining and corroborating affidavits, swore to and signed a felony complaint, or created false information and forwarded it to prosecutors. *See Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 130 (2d Cir.1997); *Llerando–Phipps v. City of New York*, 390 F.Supp.2d 372, 382–83 (S.D.N.Y.2005) (citing cases).

■ There is no record evidence of any police officer other than Officer Schneider being involved in the prosecution of Espada, and, accordingly, summary judgment in favor of Officer Miranda on the malicious prosecution claim is granted. With respect to Officer Schneider, the parties are in agreement that he reported the incident to the Assistant District Attorney, describing his own observations and those of witnesses he interviewed, and swore out the felony complaint charging Espada with assaulting a police officer. Though an officer's corroboration of the facts alleged in the complaint has been held to create a triable issue of fact as to the initiation element of malicious prosecution, *Llerando–Phipps*, 390 F.Supp.2d at 382–83, we are concerned with the application of such a rigid rule of causation in this case because Officer Schneider's actions are consistent with merely reporting the results of his investigation and acting at the behest of the prosecuting attorney. Espada has not come forward with any compelling proof of active and purposive conduct on the part of Officer Schneider, such as encouraging or importuning the prosecutor to act, *see DeFilippo*, 183 A.D.2d at 696, 583 N.Y.S.2d at 284, or falsifying statements in support of the complaint in order to justify prosecution. A jury nay, however, draw the reasonable inference from the totality of the circumstances, including Officer Schneider's involvement in the underlying arrest, that Officer Schneider was, in fact, seeking out the prosecution of Espada for assaulting a police officer. Although the presumption of independent prosecutorial decision has been sufficiently rebutted to create a triable issue of fact as to whether Officer Schneider initiated the criminal proceeding, summary judgment is nonetheless appropriate in light of our conclusions with respect to the third and fourth elements of Espada's malicious prosecution claim—probable cause and malice.

### 2. Probable Cause and Malice

■ The element of probable cause for malicious prosecution entails essentially the same: inquiry as probable cause to arrest, except that the evaluation is made in light of the facts known or believed at the time the prosecution is initiated, rather than at the time of arrest. *See Lovelace v. City of New York*, No. 02 Civ. 5398, 2005 WL 552387, at *2 (E.D.N.Y. Mar. 9, 2005); *Caraballo v. City of New York*, No. 05 Civ. 8011, 2007 WL 1584202, at *7 (S.D.N.Y. May 31, 2007). The accuser's "mistake of

fact as to the identity of a criminal may be consistent with probable cause if the party acted reasonably under the circumstances in good faith." *Colon v. City of New York*, 60 N.Y.2d 78, 82, 468 N.Y.S.2d 453, 455 N.E.2d 1248 (1983) (cited with approval by *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir.1994)).

Espada must also show that the proceeding against him was instituted with malice—a "wrong or improper motive, something other than a desire to see the ends of justice served." *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir.1996). The total lack of probable cause may reasonably permit an inference that the proceeding was maliciously instituted. *Conkey v. State*, 74 A.D.2d 998, 427 N.Y.S.2d 330, 332 (1980) (cited with approval by *Lowth*, 82 F.3d at 573).

The prosecution of Espada for assaulting a police officer was justified only if the defendants had probable cause to believe that Espada caused physical injury to a police officer with the intent to prevent such police officer from performing a lawful duty. N.Y. Penal L. § 120.05(3).[10] Espada insists that he neither assaulted Officer Miranda nor intended to prevent the officers at the scene of the fight from maintaining order and arresting the participants. Even if the jury credits Espada's account of the arrest, the fact remains that Officer Schneider was responding to a chaotic and violent street brawl in which Officer Miranda's assailant could reasonably have been misidentified. Any suggestion of Officer Schneider's bad faith is belied by Espada's admission that, as he was trying to convince Officers Schneider and Miranda of his innocence during the drive to the precinct, Officer Schneider asked him why he had been fighting with police officers instead of coming to their aid during the brawl. Officer Schneider has not wavered in his firmly held subjective belief that Espada punched Officer Miranda and, for his part, Espada has not pointed to any intervening facts that vitiate Officer Schneider's initial belief in the propriety of arrest during the melee. Indeed, Espada has not come forward with any evidence to support the conclusion that his arrest and subsequent prosecution was not reasonable under all the circumstances.

Moreover, the record is devoid of any indication of actual malice on the part of Officer Schneider. Espada has failed to even suggest that Office Schneider had a collateral motive in pursuing Espada's prosecution and has certainly not adduced any evidence that Officer Schneider deliberately falsified his statements in support of the criminal complaint. It must be recalled that Officer Schneider and his colleagues were attempting to quell a riotous street fight and that, while in such a situation Espada may have been mistakenly identified as Miranda's assailant, probable cause for the prosecution was not so lacking as to reasonably permit an inference that the proceeding was maliciously instituted. In any case, Officer Schneider's firmly held subjective belief as to Espada's guilt negates any such inference and, given the absence of any contrary evidence, precludes a finding of malice. Accordingly, defendants' motion for summary judgment

---

10. Each charge in the criminal complaint must be independently supported by probable cause. *See Allen v. City of New York*, 480 F.Supp.2d 689, 715–16 (S.D.N.Y.2007). Thus, we cannot simply decide, based on our conclusion *supra* Section III.B, that probable cause for Espada's arrest was not dissipated by the time of his prosecution, *see, e.g., Lowth*, 82 F.3d at 571, because our findings were limited to the existence of probable cause for arresting Espada on a charge of disorderly conduct. Since Espada was subsequently prosecuted for assaulting a police officer, not disorderly conduct, we start our analysis afresh.

of the malicious prosecution claim is granted.[11]

## D. Excessive Force and Assault and Battery Claims

■■■■ To prevail on a Fourth Amendment excessive force claim, a plaintiff must show that the amount of force used by police was "objectively unreasonable in light of the facts and circumstances confronting [the officers], without regard to [their] underlying intent or motivation." *Jones v. Parmley*, 465 F.3d 46, 61 (2d Cir.2006) (citing *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989)) (internal quotations omitted). Officers' actions are not to be judged in hindsight, but from the perspective of a reasonable officer on the scene. *Id.* The reasonableness of the force employed is determined by balancing the nature of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake. *Graham*, 490 U.S. at 396, 109 S.Ct. 1865. It is true that "not every push or shove, even if it m a y later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment," and that officers may need to use some degree of force in the course of an arrest, particularly where they are forced to make split-second judgments in tense or dangerous situations. *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir.2004) (internal quotations and citations omitted), *see also Jones*, 465 F.3d at 61. However, "[i]f the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir.1987) (sustaining excessive force claim on summary judgment where plaintiff alleged that arresting officer twisted her arm, "yanked" her, and threw her up against a car causing only bruising). Therefore, the proper inquiry at this stage is into the reasonableness of the force allegedly used in the course of the arrest, given the circumstances described in the record, viewed in the light most favorable to plaintiff.

■■■■ In this Circuit, personal involvement of a defendant is a prerequisite to a damages award for a § 1983 claim. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994); *Johnson v. Glick*, 481 F.2d 1028, 1034 (2d Cir.1973) ("[R]espondent superior does not suffice."). Personal involvement for the purposes of a § 1983 excessive force claim can be shown where a police officer directly participates in an assault, or was present during the assault with reasonable opportunity to intercede on plaintiff's behalf yet failed to do so. *Younger v. City of New York*, 480 F.Supp.2d 723, 732 (S.D.N.Y.2007).

■■■■ Defendants argue that Espada has not shown personal involvement, and that his injuries are *de minimis* and do not rise to the level of a constitutional violation. This Court disagrees. While it is true that the John Doe plainclothes officers, misidentified as Officers Schneider and Miranda, *see supra* Section II, are alleged to have employed the majority of the force used against Espada, we must still consider the allegation that Schneider hit Espada with a baton or nightstick after handcuffing him and placing him in the backseat of a police cruiser. Regardless of

---

11. Having found that probable cause existed to prosecute Espada, we need not reach the issue of qualified immunity. However, should a reviewing court disagree with our determination, we note that Officer Schneider would be entitled to qualified immunity because his conclusion that there was probable cause to proceed with a criminal prosecution was objectively reasonable given that a mistake as to the identity of Officer's Miranda's assailant was reasonable under the circumstances.

the limited extent of the injuries plaintiff suffered, and recognizing that compensatory damages cannot be awarded unless plaintiff's injuries were proximately caused by the constitutional violation, *Atkins v. City of New York*, 143 F.3d 100, 103 (2d Cir.1998),[12] there is no objective justification for Officer Schneider's alleged conduct. Though Officer Schneider denies striking Espada, there remain issues of material fact as to his personal involvement with respect to the excessive force claim. Officer Miranda, however, was not personally involved and, indeed, Espada's counsel conceded at oral argument that there are no allegations of harm caused by Miranda.[13] As such, summary judgment is granted on the excessive force claim against Officer Miranda, but denied as against Officer Schneider.[14]

## IV. CONCLUSION

For the foregoing reasons, defendants' motion is granted in part and denied in part. As to the John Doe defendants, the false arrest, excessive force, assault, battery, and New York malicious prosecution claims are dismissed with prejudice, while the § 1983 malicious prosecution claim is dismissed without prejudice. Espada's false arrest and malicious prosecution claims against Officers Schneider and Miranda, as well as his excessive force, assault, and battery claims against Officer Miranda, are dismissed.

The assault, battery, and § 1983 excessive force claims against Officer Schneider remain pending in this action. The parties are directed to appear for a conference before the Court on November 19, 2007 at 3:30 p.m. in Courtroom 21A.

**SO ORDERED.**

---

12. Even assuming the plaintiffs allegations to be true, there are many hurdles for plaintiff to overcome before any recovery beyond nominal damages might be obtained. Espada, an EMT, waited nine months before seeing a doctor, and only at the behest of his lawyer; even then, the reported injuries are consistent with overexertion and overuse. The doctor was, in fact, at a loss to provide an explanation for plaintiff's ailments, and could only speculate as to some connection with the assault plaintiff described. Additionally, Espada has admitted to being kicked and punched repeatedly, minutes before Officer Schneider allegedly struck him with a baton. Given these facts, it will be incredibly difficult for plaintiff to prove causation, and even more difficult for his damages claim to be more than nominal if his injuries are as minor as the medical reports suggest.

13. Plaintiff might have tried to claim that Officer Miranda was liable for failing to intercede while Schneider was assaulting him. However, he did not make that claim explicitly, and in the absence of evidence to the contrary, we conclude that such a claim would be unsuccessful. Plaintiff's allegation is that Schneider hit him a few times with a nightstick while he was handcuffed in the backseat of the patrol car and while Miranda was seated in the front passenger seat. Even assuming this to be true, it is clear that Miranda would not have had a reasonable opportunity to intercede during such a brief and spontaneous assault, and thus could not be liable for excessive force.

14. Our conclusion here applies with equal force to the state law claims for assault and battery against Officers Miranda and Schneider, which arise out of the same underlying facts as the § 1983 excessive force claim.