Paul **WESOLOWSKI**, Laura Wesolowski, Plaintiffs–Appellants,

v.

J. Richard **BOCKELMANN**, Ulster County Sheriff, Bradford Ebel, Superintendent, Ray Acevedo, Warden, County of Ulster, Defendants–Appellees.

No. 07–4175–cv.

United States Court of Appeals, Second Circuit.

Oct. 7, 2009.

Michael H. Sussman, Sussman & Watkins, Goshen, NY, for Plaintiffs–Appellants.

Michael T. Snyder, Maynard, O'Connor, Smith & Catalinotto, LLP, Albany, NY, for Defendants–Appellees.

PRESENT: B.D. PARKER, JON O. NEWMAN, and DEBRA ANN LIVINGSTON, Circuit Judges.

### AMENDED SUMMARY ORDER

Corporal Paul Wesolowski and Laura Wesolowski ("Plaintiffs–Appellants") appeal from a judgment of the United States District Court for the Northern District of New York (Kahn, *J.*) granting the summary judgment motion of J. Richard Bockelmann, Ulster County Sheriff, Bradford Ebel, Ulster County Corrections Superintendent, and Ray Acevedo, Ulster County Corrections Warden ("Defendants–Appellees") and dismissing Plaintiffs–Appellants' claims alleging retaliatory conduct in violation of their First Amendment rights. *See* 42 U.S.C. § 1983. The district court concluded that Corporal Wesolowski's report of prisoner abuse was not protected by the First Amendment because he made it pursuant to his official duties and that Laura Wesolowski had presented insufficient evidence to support her claim of retaliation on the basis of her intimate association with him. We assume the parties' familiarity with the underlying facts, procedural history, and issues presented on appeal.

We review a district court's grant of summary judgment *de novo.* *Dillon v. Morano,* 497 F.3d 247, 251 (2d Cir.2007). We affirm only if, after "resolv[ing] all ambiguities and draw[ing] all permissible inferences in favor of the non-moving party," the moving party has shown there are no triable issues of material fact. *Jaegly v. Couch,* 439 F.3d 149, 151 (2d Cir.2006).

■ The district court correctly determined that Corporal Wesolowski's act of taking his written report of the alleged prisoner abuse to his lieutenant was not speech protected by the First Amendment. Under *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 164 L.Ed.2d 689 (2006), "the First Amendment does not prohibit managerial discipline based on an employee's expressions made pursuant to official responsibilities." *Id.* at 424, 126 S.Ct. 1951. Consequently, even if, *arguendo,* Defendants–Appellees acted against Plaintiffs–Appellants because of Corporal Wesolowski's reporting, if his reporting were part of his official job responsibilities, Plaintiffs–Appellants would have no claim for injury under the First Amendment. Since determining the scope of such responsibilities is a "practical" rather than formalistic exercise, *id.,* we look beyond an employee's job description for this purpose and instead examine "the duties an employee actually is expected to perform" in the course of his employment, *id.* at 424–25, 126 S.Ct. 1951.

Plaintiffs–Appellants contend that Corporal Wesolowski's action was not pursuant to his official responsibilities because he made the report outside the chain-of-command of the Ulster County Sheriff's Department ("Department"). Specifically, they argue that he was required to report the complaint only to the sergeants who were his direct superiors, so when he brought the report to Lieutenant Scott after the sergeants failed to sign it and allegedly reluctantly directed him to take

it to a lieutenant, he was acting as a private citizen, not an employee of the Department. As further evidence that the report was not job-related, they cite Lieutenant Scott's alleged questioning of why Corporal Wesolowski had put the prisoner's complaint in writing at all, prior to the lieutenant's receipt of the report and his briefing of Warden Acevedo about the alleged assault.

Although in *Garcetti* the Supreme Court did not articulate "a comprehensive framework for defining the scope of an employee's duties in cases where there is room for serious debate," *id.* at 424, 126 S.Ct. 1951, we are not faced with such a close question here because none of the allegations regarding the Department officials' behavior demonstrates that Corporal Wesolowski's reporting was not job-related. Rather, since he was following the orders of his direct superiors in bringing the report to Lieutenant Scott's attention and the lieutenant himself pursued the complaint, his actions were consistent with the duties these superiors expected him to perform, even if various statements they made at the time showed they were displeased by the report itself. As a result, the acts of retaliation Plaintiffs–Appellants contend that the Defendants–Appellees took against them because of the reporting are not actionable on the basis that it was constitutionally protected speech.

The district court also correctly concluded that Plaintiffs–Appellants failed to adduce sufficient evidence to support their contention that Defendants–Appellees retaliated against Laura Wesolowski on the basis of her intimate association with Corporal Wesolowski by failing twice to hire her for a stock clerk position at the Department. "In order to survive a motion for summary judgment on a First Amendment retaliation claim, a plaintiff must bring forth evidence showing that [among other things] . . . there was a caus-

al connection between the protected activity and the adverse employment action." *Dillon,* 497 F.3d at 251. Even interpreted in a light most favorable to the Plaintiffs–Appellants, Laura Wesolowski's alleged relevant prior experience, favorable job interview for the position, and a civil service score superior to that of another successful candidate do not show that the Department failed to select her because she was married to Corporal Wesolowski. As a result, this claim is also without merit.

For these reasons, the district court's judgment is AFFIRMED.