12-4105-cv
*Waldron v. Milana, et al.*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# SUMMARY ORDER

Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this Court's Local Rule 32.1.1. When citing a summary order in a document filed with this Court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 4th day of September, two thousand thirteen.

PRESENT:
> JOSÉ A. CABRANES,
> CHESTER J. STRAUB,
> SUSAN L. CARNEY,
> > *Circuit Judges.*

---

DEBBIE M. WALDRON,

> *Plaintiff-Appellant*,

> v.

JAMES MILANA, Individually and as a Police Officer of the
City of Syracuse, New York, SCOTT HENDERSON, Individually
and as a Police Officer of the City of Syracuse, New York,
SEAN LYNCH, Individually and as a Police Officer of the City
of Syracuse, New York, THOMAS SKARDINSKI, Individually and
as a Police Officer of the City of Syracuse, New York,
DETECTIVE LAMBERTON, CITY OF SYRACUSE, NEW YORK,
CARMEL J. RIGGS, DANIELLE RIGGS,

> *Defendants-Cross-Defendants-Appellees,*

SGT. R. MCCARRON, Individually and as a Deputy Sheriff of the
County of Onondaga, New York, County of Onondaga, New York,
T. SHIELDS, Individually and as a Deputy Sheriff of the County of
Onondaga, New York, TERRENCE FISCHER, Individually and as a

No. 12-4105-cv

Deputy Sheriff of the County of Onondaga, New York,

*Defendants-Cross-Claimants.*

FOR PLAINTIFF-APPELLANT: BRADFORD BROOKS BENSON, Lockwood & Golden, Utica, NY.

FOR DEFENDANTS-APPELLEES: SHANNON T. O'CONNOR, City of Syracuse Office of the Corporation Counsel, Syracuse, NY.

Appeal from a judgment of the United States District Court for the Northern District of New York (Glenn T. Suddaby, Neal P. McCurn, *Judges*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the District Court's August 16, 2013 judgment is **AFFIRMED**.

Plaintiff Debbie M. Waldron appeals from the August 16, 2013 judgment of the District Court, entered pursuant to Judge McCurn's September 10, 2012 order granting defendants' motion for summary judgment on plaintiff's false-arrest and malicious-prosecution claims under 42 U.S.C. § 1983 and state law.[1] We assume the parties' familiarity with the underlying facts and the procedural history of the case, to which we refer only as necessary to explain our decision to affirm.

## BACKGROUND

At 6:10 p.m. on January 17, 2009, Officer Milana, while on patrol, responded to a 911 call reporting that a fire had broken out at 203 Rowland Street in the city of Syracuse, New York. Officer Henderson also responded to the 911 call shortly thereafter, observing upon arrival at the residence that the fire was "well-involved," "fast-moving," and "quickly spreading."[2]

---

[1] Although Waldron filed her notice of appeal on October 10, 2012, shortly after Judge McCurn's entry of summary judgment, the action was still pending as to defendants Carmel Riggs and Danielle Riggs. Judge Suddaby, to whom the case was reassigned on October 2, 2012, following the retirement of Judge McCurn, did not enter judgment terminating the case until August 16, 2013. Accordingly, pursuant to Federal Rule of Appellate Procedure 4, we treat the notice of appeal as having been filed on August 16, 2013, the date of the entry of judgment. *See* Fed. R. App. P. 4(a)(2) ("A notice of appeal filed after the court announces a decision or order—but before the entry of the judgment or order—is treated as filed on the date of and after the entry.").

[2] Officer Henderson received a degree in fire protection technology from Onondaga Community College in 2005. At the time of the fire, he had been serving as a volunteer firefighter for five years, in addition to his service as a Syracuse Police Officer.

Officers Milana and Henderson obtained witness statements at the scene of the fire from Carmel Riggs ("Carmel") and her daughter Danielle Riggs ("Danielle"), both of whom lived next door and had witnessed the house catch fire. Carmel reported having seen the homeowner's son— whom she had known for years and could easily recognize—break into the house at 5:55 p.m., stay inside for a brief period of time, and then leave in a dark-colored Jeep "SUV." Five minutes after the son had left, she observed a large amount of smoke billowing from within the house. Danielle similarly reported having seen the homeowner's son leave the house, which was currently vacant, around 6:00 p.m. in a dark-colored Jeep SUV. Both Carmel and Danielle reported that the intruder—whom they identified as "Junior Waldron"—had been accompanied in the Jeep by the homeowner's daughter. At 6:29 p.m., Officer Milana broadcast a description of the male suspect to the arson, based on the information provided by Carmel and Danielle, over the radio to the dispatcher.

The Onondaga County Sheriff's Department then directed two deputies to 207 East Warrington Road—the last known address of Francis Waldron (a.k.a. "Junior Waldron")—with instructions to locate a dark-colored Jeep SUV. At 7:00 p.m., the deputies arrived at 207 East Warrington Road and observed a dark-green Jeep parked in the driveway matching the suspect vehicle information originally described by Officer Milana less than an hour earlier. The deputies observed three people—later identified as plaintiff Debbie Waldron ("plaintiff" or "Waldron"), Anthony Waldron, and Francis Waldron—exit the house and leave in the Jeep. At 7:10 p.m., the officers conducted a traffic stop. Detective Lynch brought Carmel to the traffic stop, where, at 7:19 p.m., she identified the vehicle as the Jeep from the scene of the fire. The officers then transported plaintiff, along with the other Waldrons, to the Criminal Investigation Department ("C.I.D.") for further questioning.

While plaintiff was detained at C.I.D., Lieutenant Morgan, the fire investigator on duty that evening, tested plaintiff's shoes, socks, and underneath her fingernails for the presence of a fire "accelerant," all of which tested positive. Lieutenant Morgan also noted that plaintiff's clothing had a strong chemical odor of gasoline or other petroleum product. Lieutenant Morgan then returned to 203 Rowland Street to conduct further investigation into the cause of the fire, which ultimately revealed that the fire was started by the "intentional ignition of combustibles." Joint App'x 91. Based on the possible sources of ignition, Lieutenant Morgan concluded that fire was the result of human involvement. In light of the foregoing evidence, Detective Skardinski signed an arrest report for the three suspects, including Debbie Waldron, at 11:30 p.m. for arson and reckless endangerment.

On July 13, 2009, the charges against plaintiff were voluntarily dismissed, and the instant suit followed on January 19, 2010. The defendants, on July 6, 2012, filed a motion for summary judgment on all claims, contending that no reasonable juror could find that the defendants lacked

3

probable cause to arrest plaintiff.  The District Court granted the motion on September 10, 2012.  *See Waldron v. Milana, et al.*, 5:10-CV-0065 NPM/DEP, 2012 WL 3929898 (N.D.N.Y. Sept. 10, 2012).

This appeal followed.

## DISCUSSION

We review a grant of summary judgment *de novo,* viewing the facts "in the light most favorable to the non-moving party and draw[ing] all reasonable inferences in that party's favor." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 271 (2d Cir. 2011).  Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted).  We similarly review a district court's determination of probable cause *de novo*, but we must "take care both to review findings of historical fact only for clear error and to give due weight to inferences drawn from those facts" by the district judge and law enforcement officers.  *Ornelas v. United States*, 517 U.S. 690, 699 (1996).

False arrest and malicious prosecution claims are barred if the officer had probable cause to make the arrest.  *See Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) ("The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." (internal quotation marks omitted)); *Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (listing the required elements of a malicious prosecution claim, one of which is "lack of probable cause for commencing the proceeding").  "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (internal quotation marks omitted).  A court "must consider [only] those facts *available to the officer* at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks omitted).  A court should consider the probative value of each item of evidence, and "then 'look[ ] to the totality of the circumstances' to evaluate whether there was probable cause to arrest and prosecute the plaintiff." *Stansbury v. Wertman*, 721 F.3d 84, 89 (2d Cir. 2013) (quoting *Panetta*, 460 F.3d at 395).

Waldron argues that the District Court erred in finding no genuine issues of material fact with regard to the existence of probable cause for her arrest.  After an independent and *de novo*

4

review of the record, we disagree.[3] Both Carmel and Danielle initially reported that the intruder—whom they identified as the homeowner's son, Francis "Junior" Waldron—was accompanied by the homeowner's daughter at the scene of the fire. Both suspects reportedly left 203 Rowland Street together around 6:00 p.m., shortly before the fire erupted, in a dark-colored Jeep SUV matching the description of plaintiff's vehicle. Roughly one hour later, police conducted a traffic stop of a Jeep driven by plaintiff, in which Francis Waldron was a passenger. Carmel then identified the vehicle as the Jeep she had seen roughly an hour earlier at the scene of fire in question. In addition to the eyewitness statements, the fire investigator concluded that fire had been caused by human involvement. Plaintiff's clothing smelled like gasoline, and her shoes, socks, and underneath her fingernails all tested positive for "accelerants."

Waldron contends that the District Court erred in not taking into account exculpatory evidence—namely, a store receipt in her pocket indicating that an individual made a purchase from Green Hills Market at 6:01 p.m. on the day of the fire. The scope of an arresting officer's obligation to consider exculpatory evidence is guided by two competing principles. On the one hand, "[o]nce a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (internal quotation marks omitted). Yet, on the other hand, an "officer may not disregard plainly exculpatory evidence." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006); *see, e.g.*, *Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007) (holding that a Fourth Amendment violation could occur when incarceration was due to the police's "failure to perform the simple task of checking" exculpatory evidence in their possession).

We do not consider the issue of whether the officers had a duty to look at the receipt in Waldron's pocket once she alerted them to its existence and possible exculpatory value. Even if the officers had looked at the receipt, it did not contain information identifying Waldron as the purchaser and, in light of other evidence, was insufficient standing alone to defeat probable cause. *See Jocks v. Tavernier*, 316 F.3d 128, 136 (2d Cir. 2003) (no duty to investigate prior to arrest "unsubstantiated claims about the emergency" that would have been exculpatory); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996) (where exculpatory information was "not obviously true on its face," it did not eliminate probable cause for the purpose of a qualified immunity inquiry);

---

[3] A threshold issue in any probable cause challenge is determining the time of arrest. In this case, the evidence suggests that the officers' temporary investigative detention of plaintiff may have evolved into a *de facto* arrest prior to the testing for an accelerant, either at the traffic stop or during the questioning at C.I.D. *See Posr v. Doherty*, 944 F.2d 91, 98 (2d Cir. 1991) ("If the totality of circumstances indicates that an encounter has become too intrusive to be classified as an investigative detention, the encounter is a full-scale arrest, and the government must establish that the arrest is supported by probable cause." (internal quotation marks omitted)). Counsel for the plaintiff conceded at oral argument that he had not raised this issue in his briefing, and, thus, any argument relating to the time of arrest has been waived. *See JP Morgan Chase Bank v. Altos Hornos de Mexico, S.A. de C.V.*, 412 F.3d 418, 428 (2d Cir. 2005) ("[A]rguments not made in an appellant's opening brief are waived even if the appellant pursued those arguments in the district court or raised them in a reply brief."). Accordingly, we conduct our probable cause analysis, like the District Court, from the standpoint that plaintiff was not arrested until her arrest report was signed at 11:30 p.m. on the very evening of the fire.

*United States v. Fama*, 758 F.2d 834, 838 (2d Cir. 1985) ("The fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause.").[4]

## CONCLUSION

We have considered all of Waldron's remaining arguments on appeal and find them to be without merit. For the reasons stated above, we **AFFIRM** the August 16, 2013 judgment of the District Court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

---

[4] Because we affirm the judgment of the District Court on the ground that probable cause existed to arrest plaintiff, we do not reach the issue of qualified immunity. *See, e.g.*, *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 52 (2d Cir. 2009) ("Because we conclude that there was no violation of the plaintiffs' constitutional rights, we do not reach the issue[ ] of qualified immunity . . . .").