22-3234-cv
*Carruthers v. Colton*

# United States Court of Appeals
## for the Second Circuit

_____

August Term 2023

(Argued:  December 12, 2023    Decided: August 20, 2025)

No. 22-3234-cv

_____

RAYMOND A. CARRUTHERS,

*Plaintiff-Appellant,*

— v. —

KIMBERLY COLTON, INDIVIDUALLY, CHARLES HUMPHREYVILLE, INDIVIDUALLY,
KRISTEN WESTON, INDIVIDUALLY,

*Defendants-Appellees.*

_____

Before:          WALKER, CABRANES, and BIANCO, *Circuit Judges.*

Plaintiff-Appellant Raymond Carruthers appeals from the judgment, entered on November 29, 2022, by the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*), granting the motion to dismiss Carruthers's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants-Appellees Kimberly Colton, Charles Humphreyville, and Kristen Weston (hereinafter, "Defendants").  Carruthers brought claims, pursuant to 42 U.S.C. § 1983, for malicious prosecution, fabrication of evidence, false arrest, and

failure to intervene against Defendants, who are all New York State Troopers. The claims arose from Defendants' alleged participation in a traffic stop of Carruthers's vehicle on September 4, 2017, in Oneida County, New York, and in his subsequent arrest and prosecution for a felony driving while intoxicated ("DWI") offense, multiple lesser DWI-related offenses, and a traffic infraction.

We conclude that the district court correctly dismissed Carruthers's false arrest claim and the portion of his malicious prosecution claim based on the DWI-related charges that were dismissed as part of his guilty plea to the traffic infraction but erred in dismissing Carruthers's malicious prosecution claim as to the terminated felony charge and his fabrication of evidence claim. First, with respect to the false arrest claim, we agree with the district court that Carruthers's guilty plea to the traffic infraction established probable cause for his arrest and defeats that claim. Second, as to the malicious prosecution claim, the district court correctly held that Carruthers does not have a viable claim as to the DWI-related charges dismissed as part of the negotiated guilty plea. We generally assess the favorable termination element of a malicious prosecution claim charge by charge. Applying that rule to the guilty plea context, when a charge is dismissed as part of a negotiated agreement in which the defendant agrees to plead guilty to a different charge, that dismissal does not constitute a favorable termination for the purposes of a malicious prosecution claim. However, even if a guilty plea has been entered into for one or more charges, a favorable termination can be established for another dismissed charge in the same criminal case if the dismissal was unrelated to the plea disposition. Thus, Carruthers has a plausible claim as to the terminated felony charge because the amendment of that charge to a misdemeanor (which effectively dismissed the felony charge) does not appear, based upon the complaint, to have been terminated as part of the guilty plea disposition. Finally, with respect to the fabrication of the evidence claim, we conclude that Carruthers has adequately alleged particularized facts that, when construed in his favor, could reasonably give rise to the inference that Trooper Colton intentionally fabricated evidence to justify the DWI-related charges.

Accordingly, we **AFFIRM** the judgment of the district court as to the false arrest claim and the malicious prosecution claim insofar as it relates to the DWI-related charges dismissed as part of the plea agreement, we **VACATE** the judgment of the district court as to the malicious prosecution claim only as it

2

relates to the terminated felony charge and the fabrication of evidence claim, and we **REMAND** for further proceedings consistent with this opinion.

FOR PLAINTIFF-APPELLANT: ZACHARY C. OREN, Law Office of Zachary C. Oren, Utica, New York.

FOR DEFENDANTS-APPELLEES: BEEZLY J. KIERNAN, ASSISTANT SOLICITOR GENERAL (Barbara D. Underwood, Solicitor General, and Andrea Oser, Deputy Solicitor General, *on the brief*), *for* Letitia James, Attorney General, State of New York, Albany, New York.

JOSEPH F. BIANCO, *Circuit Judge*:

Plaintiff-Appellant Raymond Carruthers appeals from the judgment, entered on November 29, 2022, by the United States District Court for the Northern District of New York (Frederick J. Scullin, Jr., *Judge*), granting the motion to dismiss Carruthers's complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6), filed by Defendants-Appellees Kimberly Colton, Charles Humphreyville, and Kristen Weston (hereinafter, "Defendants"). Carruthers brought claims, pursuant to 42 U.S.C. § 1983, for malicious prosecution, fabrication of evidence, false arrest, and failure to intervene against Defendants, who are all New York State Troopers.

The claims arose from Defendants' alleged participation in a traffic stop of Carruthers's vehicle on September 4, 2017, in Oneida County, New York, and in his subsequent arrest and prosecution for a felony driving while intoxicated

3

("DWI") offense, multiple lesser DWI-related offenses, and a traffic infraction. After the initiation of the prosecution in Utica City Court, Carruthers moved to suppress evidence related to these charges, and sometime before the suppression hearing, the state decided to amend the felony charge to a misdemeanor. After the hearing, which resulted in the suppression of evidence, a plea disposition was reached with the Oneida County District Attorney's Office whereby Carruthers pled guilty to the traffic infraction, and the remaining DWI-related offenses were dismissed. Carruthers then filed the instant federal lawsuit.

In granting Defendants' motion to dismiss the federal complaint, the district court determined, *inter alia*, that Carruthers's guilty plea to the traffic infraction demonstrated that there was probable cause to arrest him, and thus his false arrest claim failed as a matter of law. The district court also held that Carruthers failed to allege the favorable termination element of his malicious prosecution claim because his guilty plea to the traffic infraction established that the criminal proceeding did not terminate in his favor. With respect to the fabrication of evidence claim, the district court concluded that Carruthers's allegations were conclusory and contradicted by portions of Trooper Colton's testimony at the

4

suppression hearing, and thus, Carruthers failed to adequately plead that Trooper Colton intentionally made false statements in support of the DWI-related charges.

We conclude that the district court correctly dismissed Carruthers's false arrest claim and the portion of Carruthers's malicious prosecution claim based on the DWI-related charges that were dismissed as part of his guilty plea to the traffic infraction but erred in dismissing Carruthers's malicious prosecution claim as to the terminated felony charge and his fabrication of evidence claim. First, with respect to the false arrest claim, we agree with the district court that Carruthers's guilty plea to the traffic infraction established probable cause for his arrest and defeats that claim. Second, as to the malicious prosecution claim, the district court correctly held that Carruthers does not have a viable claim as to the DWI-related charges dismissed as part of the negotiated guilty plea. We generally assess the favorable termination element of a malicious prosecution claim charge by charge. Applying that rule to the guilty plea context, when a charge is dismissed as part of a negotiated agreement in which the defendant agrees to plead guilty to a different charge, that dismissal does not constitute a favorable termination for the purposes of a malicious prosecution claim. However, even if a guilty plea has been entered into for one or more charges, a favorable termination can be established

5

for another dismissed charge in the same criminal case if the dismissal was unrelated to the plea disposition. Thus, Carruthers has a plausible claim as to the terminated felony charge because the amendment of that charge to a misdemeanor (which effectively dismissed the felony charge) does not appear, based upon the complaint, to have been terminated as part of the guilty plea disposition. Finally, with respect to the fabrication of the evidence claim, we conclude that Carruthers has adequately alleged particularized facts that, when construed in his favor, could reasonably give rise to the inference that Trooper Colton intentionally fabricated evidence to justify the DWI-related charges.

Accordingly, we **AFFIRM** the judgment of the district court as to the false arrest claim and the malicious prosecution claim insofar as it relates to the DWI-related charges dismissed as part of the plea agreement, we **VACATE** the judgment of the district court as to the malicious prosecution claim only as it relates to the terminated felony charge and the fabrication of evidence claim, and we **REMAND** for further proceedings consistent with this opinion.

BACKGROUND

## I. Factual Background[1]

On the evening of September 4, 2017, New York State Trooper Colton was on duty when she received a call from police dispatch reporting that a gray car on Interstate 90 in Oneida County, New York, later determined to have been driven by Carruthers, was driving "extremely slowly" and was "all over the road." App'x at 9, 36. According to Trooper Colton, after responding to the call, she located the car on the interstate and "clocked the vehicle on radar at 41 [miles-per-hour] and observed it cross the center lane marker [three] times." *Id*. at 36. Trooper Colton then stopped the vehicle.

Police records and Trooper Colton's testimony during state-court proceedings related to Carruthers's eventual arrest indicate that, during the stop, Trooper Colton requested Carruthers's driver's license and registration and then administered field sobriety tests, including the horizontal gaze nystagmus, walk-and-turn, and one-leg-stand tests. According to Trooper Colton, based on her

---

[1] The following facts are taken from Carruthers's complaint, App'x at 7–21, as well as documents attached to the complaint as exhibits and incorporated into the complaint by reference, App'x at 23–44. *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991).

observations, Carruthers "appeared disheveled, smelled strongly of alcohol, and had watery, bloodshot eyes," and failed the tests. *Id*. at 36, 171. Carruthers disputes Trooper Colton's account of the stop. He alleges that he was alert and responsive and that, although the field sobriety tests were improperly administered, he passed those tests.

After conducting the field sobriety tests, Trooper Colton asked Carruthers to take a field breathalyzer test, which Carruthers refused. Trooper Colton then placed Carruthers under arrest for a misdemeanor offense of driving while intoxicated ("DWI"), in violation of New York Vehicle and Traffic Law ("VTL") § 1192(3). Trooper Colton told Carruthers that he would be processed at the police barracks for this violation and then would be released.

At the barracks, Trooper Colton completed a standard police form describing the circumstances of Carruthers's arrest, pursuant to New York Criminal Procedure Law § 710.30 (the "CPL Notice").[2] She indicated in her report that Carruthers told her that, at the time of the stop, he was driving home from a

_____

[2] The purpose of the CPL Notice is to inform a defendant that the state intends to offer at trial "evidence of a statement made by a defendant to a public servant" or "testimony regarding an observation of the defendant either at the time or place of the commission of the offense or upon some other occasion relevant to the case, to be given by a witness who has previously identified him or her." N.Y. Crim. Proc. Law § 710.30(1).

local casino, where he had consumed two beers; she did not indicate that Carruthers had any prior alcohol-related convictions or license suspensions on the portion of the CPL Notice that asks officers to record such convictions or suspensions. She also had Carruthers take a breathalyzer test, which generated a blood-alcohol-content ("BAC") of .22. Carruthers did not believe that this was an accurate result and asked to speak with his attorney. During the ensuing call, in which both Carruthers and Trooper Colton allegedly participated, Trooper Colton agreed to the attorney's request that she "not . . . speak to [Carruthers] about the arrest," and she also informed the attorney that Carruthers would be released unless he was charged with a felony for driving under the influence. *Id*. at 15. The attorney advised Trooper Colton that a phlebotomist was coming to the barracks "to collect [Carruthers's] blood due to the unreliable breathalyzer test." *Id*. Although the phlebotomist eventually arrived at the barracks, he was unable to see Carruthers because Carruthers was detained in police custody.

Sometime after the call with Carruthers's attorney, Trooper Colton filed a felony complaint charging Carruthers with aggravated unlicensed operation of a motor vehicle in the first degree, in violation of VTL § 511(3)(a), for:

> operat[ing] a motor vehicle while knowing or having reason to know that his . . . license . . . was suspended or revoked, and said suspension

9

or revocation was based either upon the defendant's refusal to submit to a chemical test pursuant to [VTL Section 1194] or upon a violation of [VTL Section 1192], and said operation occurred while the defendant was under the influence of alcohol . . . in violation of [VTL Section 1192(3)].

*Id*. at 27. Trooper Colton indicated in the felony complaint that the allegation that Carruthers had a previous VTL Section 1192 conviction was based on "[a] computer check with the New York State Department of Motor Vehicles" ("N.Y. D.M.V.") and Carruthers's "oral admission to the previous conviction and/or suspension/revocation of license." *Id.*

In addition to the felony VTL Section 511(3)(a) charge, Carruthers was also charged with: (1) a misdemeanor for DWI, in violation of VTL § 1192(3); (2) a misdemeanor for aggravated DWI for having a BAC above .18, in violation of VTL § 1192(2-a)(a); (3) an infraction for refusing to take a breath test, in violation of VTL § 1194(1)(b); and (4) an infraction for moving lanes unsafely, in violation of VTL § 1128(a). In support of these charges, Trooper Colton submitted a DWI bill of particulars averring that Carruthers failed the field sobriety tests she administered at the scene and also failed the breath test she administered at the barracks, as it indicated he had a BAC of .22. Carruthers was then transferred to the Utica Police

10

Department, where he was held in lock-up overnight and released on bail the next day.

Carruthers alleges that there were no grounds for Trooper Colton to charge him with a felony under VTL Section 511(3)(a). Among other things, he alleges that a background check run shortly after he was arrested revealed that he previously had his driver's license suspended for failure to answer a court summons, but there were no records indicating that he had ever had his license suspended for a violation of VTL Sections 1192 or 1194, as required for the felony charge under VTL Section 511(3)(a). He further alleges that an independent search of N.Y. D.M.V. records also revealed no such suspension. Moreover, Carruthers alleges that, contrary to Trooper Colton's sworn statement in the felony complaint, he had no conversations with her about a DWI-related license suspension and, as noted above, the CPL Notice did not report any previous alcohol-related convictions or license suspensions. Carruthers contends that, based on these facts, Trooper Colton "filed a false felony complaint to prevent [him] from being released and getting his own independent test of his blood." *Id.* at 15.

At some point following his arrest, the Oneida County District Attorney's Office (the "District Attorney's Office") amended Carruthers's felony charge for

11

operating a vehicle while intoxicated with a prior DWI-related conviction or license suspension to a misdemeanor charge of aggravated unlicensed operation of a motor vehicle in the third degree, in violation of VTL § 511(1)(a), for operating a vehicle with a driver's license suspended for a reason other than a prior DWI. It is unclear from the complaint why the felony charge was amended to a misdemeanor.

Carruthers subsequently filed a motion in the Utica City Court, where the charges were pending, to suppress all evidence obtained in the course of his arrest. Trooper Colton testified at the suppression hearing, which was held over two days in April and June 2018.

In a Decision and Order dated September 13, 2018, the city court found that Trooper Colton's testimony consisted of "equivocation, failure of memory, and lack of candor," and that it was "selective and self-serving." *Id*. at 40. For example, the city court explained that, although she testified that she had been a New York State Trooper for 18 years, received training on how to conduct DWI traffic stops and field sobriety tests, and received a trooper of the year award four times for her DWI work, Trooper Colton provided "stunningly weak, shallow, evasive, and unconvincing" answers to questions regarding the administration of the field

12

sobriety tests, including the criteria for failing certain tests she administered and whether Carruthers, in fact, failed those tests, and Carruthers's subsequent arrest. *Id*. at 36–38. Moreover, when cross-examined as to her motive for wrongly charging Carruthers with a felony for aggravated unlicensed operation of a motor vehicle under VTL Section 511(3)(a), as opposed to a misdemeanor for that offense under VTL Section 511(1)(a), the hearing was adjourned so that Trooper Colton could speak with the assistant district attorney. When the hearing resumed several weeks later, Trooper Colton testified that the VTL "sometimes gets confusing," and that she "ma[d]e a mistake of charging [Carruthers] with [the felony] which is a human error[.] [I]t is not perjury." *Id*. at 39.

Based on the evidentiary hearing, the city court concluded that, although Trooper Colton had "reasonable suspicion for the initial [traffic] stop and sufficient grounds for a further investigatory detention[,] . . . her testimony regarding probable cause for a DWI arrest [was] another matter altogether"; it was "neither reliable nor credible," "consisting not of facts, but of assurances." *Id*. at 40–41. Based on those findings, the city court suppressed "all evidence obtained subsequent to" Carruthers's arrest. *Id*. at 41.

13

In October 2018, shortly after the city court's decision, Carruthers and the District Attorney's Office agreed to a plea disposition, in which Carruthers pled guilty to the infraction for moving lanes unsafely, in violation of VTL § 1128(a), and the remaining DWI-related charges were dismissed.[3]

## II.    Procedural History

On April 3, 2020, Carruthers commenced the instant action in the Northern District of New York against Trooper Colton, as well as New York State Troopers Charles Humphreyville and Kristin Weston, who also allegedly participated in Carruthers's arrest.   As relevant to this appeal, Carruthers brought claims, pursuant to Section 1983, for false arrest and malicious prosecution, in violation of the Fourth Amendment, and for fabrication of evidence, in violation of the Fifth, Sixth, and Fourteenth Amendments.[4]

---

[3]  The "Plea of Guilty" form signed by Carruthers, which was attached to the federal complaint, indicates that his guilty plea to the traffic infraction was conditioned upon the remaining DWI-related charges being dismissed.  App'x at 43.  Although that form was not signed by the District Attorney's Office and there is no separate written plea agreement, Carruthers does not dispute on appeal the district court's determination that his guilty plea was the result of an agreement with the District Attorney's Office to dismiss the remaining DWI-related charges.

[4]  Carruthers brought his claims for false arrest, malicious prosecution, and fabrication of evidence against Troopers Colton, Humphreyville, and Weston.  In addition, Carruthers brought a claim, pursuant to Section 1983, against only Troopers Humphreyville and

On July 1, 2020, the Defendants moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), and, on November 29, 2021, the district court granted their motion in its entirety. First, as to the malicious prosecution claim, the district court concluded that Carruthers's guilty plea to the traffic infraction, "which was the result of his agreement with the District Attorney's Office, constitutes an outcome of the criminal proceeding that was not in his favor." *Carruthers v. Colton*, No. 20-cv-399 (FJS/TWD), 2021 WL 5585798, at *3 (N.D.N.Y. Nov. 29, 2021) (emphasis omitted). Thus, the district court dismissed the malicious prosecution claim because Carruthers could not establish the favorable termination element of that claim. *Id*. Second, with respect to the false arrest claim, the district court held that the claim must be dismissed because Carruthers's guilty plea to the traffic infraction established that there was probable cause for his arrest. *Id*. Finally, the district court dismissed the fabrication of

Weston for failure to intervene, in violation of the Fourth, Fifth, Sixth, and Fourteenth Amendments. However, in his briefing on appeal, Carruthers does not assert any arguments with respect to the dismissal of the claims against Troopers Humphreyville or Weston. As a result, we deem any challenges to the dismissal of the claims against them, including the failure to intervene claim, to be waived. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 300 (2d Cir. 2006) ("Issues not sufficiently argued in the briefs are considered waived and normally will not be addressed on appeal." (internal quotation marks and citation omitted)). Thus, we limit our review to the dismissal of the claims against Trooper Colton.

15

evidence claim on the ground that Carruthers's allegations failed to establish that Trooper Colton intentionally fabricated evidence because the allegations were conclusory and contradicted by portions of Trooper Colton's testimony during the suppression hearing. *Id.* at *4. For example, the district court found that Trooper Colton's testimony "under oath that she 'ma[d]e a mistake of charging [Carruthers] with [a felony],' which she described as 'a human error,'" contradicted Carruthers's "conclusory allegations" that Trooper Colton intentionally fabricated evidence. *Id.* (first alteration in original). However, the district court dismissed the fabrication of evidence claim against Trooper Colton without prejudice to "provide[] [Carruthers] the opportunity to move for leave to amend his complaint to include additional factual allegations supporting his claim that Defendant Colton acted knowingly when she allegedly fabricated the felony complaint, criminal informations, and her supporting deposition." *Id*. at *4 n.2.

Carruthers then moved to amend his complaint on December 19, 2021, but, on September 7, 2022, the magistrate judge denied his motion. *See generally Carruthers v. Colton*, No. 20-cv-399 (FJS/TWD), 2022 WL 18232634 (N.D.N.Y. Sept. 7, 2022). In particular, the magistrate judge explained that Carruthers's proposed amended complaint was "legally insufficient because [his] assertions that [Trooper

16

Colton] falsified evidence [was] still speculative and conclusory, without a proper factual basis." *Id*. at *3. Noting that she "ha[d] grave doubts that [Carruthers would] be able to sufficiently plead a falsification of evidence claim," the magistrate judge denied the motion without prejudice and Carruthers was given one final opportunity to amend his complaint. *Id*.

After Carruthers declined to move to amend again, Trooper Colton filed a letter motion requesting that the case be dismissed in its entirety with prejudice. The magistrate judge issued a report and recommendation ("R&R"), recommending that Trooper Colton's motion be granted. The district adopted the R&R in its entirety and dismissed the case with prejudice. This appeal followed.[5]

---

[5] After this appeal was argued, the Supreme Court granted *certiorari* in *Chiaverini v. City of Napolean* to resolve "[w]hether Fourth Amendment malicious prosecution claims are governed by the charge-specific rule," under which "a malicious prosecution claim can proceed as to a baseless criminal charge, even if other charges brought alongside the baseless charge are supported by probable cause," or "by the 'any-crime' rule," under which "probable cause for even one charge defeats a plaintiff's malicious prosecution claim[] as to every other charge, including those lacking probable cause." Petition for Writ of Certiorari, *Chiaverini v. City of Napoleon*, 2023 WL 4707059 (U.S. July 14, 2023) (No. 23-50), *cert. granted*, 2023 WL 8605742. We ordered this case stayed until the Supreme Court decided *Chiaverini* and requested that the parties submit supplemental briefing to address that decision once it was issued. The Supreme Court decided *Chiaverini* on June 20, 2024. *Chiaverini v. City of Napoleon*, 602 U.S. 556 (2024). Carruthers and Colton submitted their supplemental briefs on July 1, 2024, and July 8, 2024, respectively.

**DISCUSSION**

"We review *de novo* a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), accepting as true all factual allegations in the complaint and drawing all reasonable inferences in favor of the plaintiff." *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**I.      False Arrest Claim**

Carruthers argues that the district court erred by dismissing his false arrest claim because he should not have been detained for the traffic infraction and there was no probable cause to support his warrantless DWI arrest and subsequent prosecution. We disagree.

"A [Section] 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law," which the parties agree would apply here. *Gonzalez v. City of Schenectady*, 728 F.3d 149, 155 (2d Cir. 2013). To establish a false

18

arrest claim under New York law, a plaintiff must adequately allege "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Aponte v. Perez*, 75 F.4th 49, 59–60 (2d Cir. 2023) (alteration adopted) (internal quotation marks and citation omitted). "Under both federal and New York state law, probable cause is a complete defense to a false arrest claim." *Triolo v. Nassau Cnty.*, 24 F.4th 98, 106 (2d Cir. 2022). "An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006) (internal quotation marks and citation omitted). "To assess probable cause, a court considers only the facts available to the officer at the time of the arrest and immediately before it." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021) (internal quotation marks and citation omitted).

Moreover, "when faced with a claim for false arrest, we focus on the validity of the *arrest*, and not on the validity of each charge." *Jaegly*, 439 F.3d at 154 (emphasis in original). A police officer is not liable for false arrest under Section

19

1983 if probable cause to arrest the plaintiff existed "for *any* crime—whether or not that particular crime was closely related to the offense the officers said was the reason for the arrest." *Berg v. Kelly*, 897 F.3d 99, 111 (2d Cir. 2018) (emphasis in original).

It is well-established that a false arrest claim must fail "if [the plaintiff] was convicted of the offense for which he was arrested," *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986), because such a conviction represents "conclusive evidence of probable cause," *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (internal quotation marks and citation omitted). We have further concluded that this principle applies whether the conviction arose "by jury verdict or guilty plea." *United States v. Jones*, 43 F.4th 94, 102 n.6 (2d Cir. 2022); *see Maietta v. Artuz*, 84 F.3d 100, 102 n.1 (2d Cir. 1996) (explaining that "common law principles preclude a challenge to the validity of an arrest after a guilty plea, for purposes of a civil suit under 42 U.S.C. § 1983"). Based on this precedent, we agree with the district court that Carruthers's guilty plea for the traffic infraction constitutes a conviction that bars his false arrest claim. *See Carruthers*, 2021 WL 5585798, at *3.

Carruthers's arguments to the contrary are unpersuasive. He argues that the traffic infraction cannot justify his arrest because he should have only been

issued a citation and then released at the scene. However, under New York law at the time of the arrest, although an officer could issue a citation and release an individual who has committed a traffic infraction, the officer was also authorized to arrest that individual. *See* N.Y. Crim. Pro. Law §§ 140.05 (authorizing warrantless arrests under specified circumstances), 140.10(1) (authorizing the warrantless arrest of a person for "[a]ny offense" where an officer "has reasonable cause to believe that such person has committed such offense in his or her presence"), 140.20(2)(a) (stating that, for certain offenses, an officer "*may* instead . . . issue and serve an appearance ticket upon the arrested person and release him from custody" (emphasis added)); *see also id.* § 140.20(1)(d) (indicating that a defendant may be "arrest[ed] . . . for a traffic infraction"); VTL § 155 (stating that New York criminal procedure law applies to traffic infraction violations under the VTL). Thus, because the traffic infraction was an arrestable offense and Carruthers's guilty plea to that infraction demonstrates that probable cause existed to arrest him for that infraction, the false arrest claim fails as a matter of law. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that "[i]f an officer has probable cause to believe that an individual has committed even a very minor

21

criminal offense in his presence," including a traffic violation, "he may, without violating the Fourth Amendment, arrest the offender").

Finally, to the extent Carruthers argues that he has a viable false arrest claim because he was arrested not for the traffic infraction but for a DWI offense purportedly without probable cause, that argument also misses the mark. As noted above, a false arrest claim "turns only on whether probable cause existed to arrest a defendant," not whether it existed "with respect to each individual charge, or, indeed, any charge actually invoked by the arresting officer at the time of arrest." *Jaegly*, 439 F.3d at 154. Therefore, regardless of the DWI charges, the traffic infraction alone provides the necessary probable cause to defeat Carruthers's false arrest claim. *See Marcavage v. City of New York*, 689 F.3d 98, 109–110 (2d Cir. 2012) (explaining that a Fourth Amendment claim fails if "there was probable cause to arrest [a] Plaintiff[] for any single offense," and dismissing the claim after determining there was probable cause for one of the four charges at issue in the case).

Accordingly, we affirm the district court's dismissal of Carruthers's false arrest claim.

## II. Malicious Prosecution Claim

To prevail on a malicious prosecution claim brought under Section 1983, a plaintiff must establish: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding,[](4) actual malice," and "(5) a sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights." *Alexander v. City of Syracuse*, 132 F.4th 129, 158 (2d Cir. 2025) (alteration adopted) (internal quotation marks and citations omitted).

At issue on appeal are the probable cause and favorable termination elements of Carruthers's malicious prosecution claim. In particular, although not reached by the district court, the parties contest whether Trooper Colton had probable cause to prosecute Carruthers on the DWI-related charges. Moreover, Carruthers contends that the district court erred by concluding that the proceeding did not terminate in his favor due to his guilty plea for the traffic infraction. As set forth below, based on the complaint (including documents attached thereto

23

and incorporated by reference therein) and drawing all inferences in Carruthers's favor, we conclude that he has adequately alleged the probable cause and favorable termination elements of his malicious prosecution claim as to the terminated felony charge only. Therefore, we vacate the district court's dismissal of Carruthers's malicious prosecution claim as to that charge.

### A. Probable Cause

Carruthers contends that Trooper Colton did not have probable cause for the DWI-related charges, alleging, *inter alia*, that he exhibited no signs of alcohol-related impairment during the stop and, despite their improper administration, he passed each field sobriety test. In addition, Carruthers asserts that there was no probable cause for the felony DWI charge because of the absence of the requisite prior DWI-related conviction or license suspension. Trooper Colton counters that Carruthers's guilty plea for the traffic infraction "provides conclusive evidence of probable cause and thus a complete defense to malicious prosecution." Appellees' Br. at 17.

"[P]robable cause is a complete defense to a constitutional claim of malicious prosecution." *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). "Probable cause, in the context of malicious prosecution, has [] been described as such facts

24

and circumstances as would lead a reasonably prudent person to believe the plaintiff guilty." *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003). In assessing probable cause for a malicious prosecution claim, in contrast to a false arrest claim, courts must "evaluate suits . . . charge by charge." *Chiaverini v. City of Napolean*, 602 U.S. 556, 562 (2024). That is, "probable cause must be shown as to each crime charged in the underlying criminal action." *Kee v. City of New York*, 12 F.4th 150, 166 (2d Cir. 2021); *see also Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991) ("[W]here the issue is whether the officers had probable cause to commence proceedings," we must "separately analyze the charges claimed to have been maliciously prosecuted.").

As an initial matter, applying the "charge-by-charge" rule, the DWI-related charges must be assessed independently from the traffic infraction. Thus, we reject Trooper Colton's contention that Carruthers's guilty plea as to the traffic infraction provides the requisite probable cause with respect to the DWI-related charges to defeat those claims.

Carruthers has plausibly alleged a lack of probable cause as to the DWI-related charges. To be sure, the city court determined that "Colton's testimony establishe[d] reasonable suspicion for the initial stop and sufficient grounds for a

further investigatory detention." App'x at 41. However, the city court also determined that "her testimony regarding probable cause for [the] DWI arrest [wa]s another matter altogether, consisting not of facts, but of assurances," App'x at 41, and "was neither reliable nor credible," App'x at 40. Further, Carruthers alleged in his complaint that he was "alert and responsive" during the stop and did not fail any of the field sobriety tests Trooper Colton administered. App'x at 9, 14. Moreover, with respect to the felony charge under VTL Section 511(3)(a), the complaint alleges that Carruthers never had a prior DWI-related conviction or license suspension, as required for that felony charge, and that he never talked to Trooper Colton about any such convictions or suspensions. Accordingly, regardless of whether there was probable cause for the traffic infraction, Carruthers has adequately alleged a lack of probable cause for the DWI-related charges.

### B. Favorable Termination

Carruthers asserts that it was error for the district court to conclude that he did not establish the favorable termination element of his claim because his case ended with a guilty plea. Specifically, Carruthers contends that each charge should be assessed individually and, because he pled guilty only to the traffic

26

infraction and the DWI-related charges were dismissed, he has satisfied the favorable termination requirement as to the DWI-related charges. In opposition, Trooper Colton asserts, as the district court held, that a malicious prosecution claim "turns on whether the entire criminal prosecution, not merely an individual charge, terminated favorably for the plaintiff," and that, as a result of Carruthers's conviction for the traffic infraction, the proceeding did not terminate in his favor. Appellees' Br. at 17–18.

As set forth below, we generally assess favorable termination charge by charge. In applying that rule to the guilty-plea context, the dismissal of a charge that occurs as part of a negotiated agreement to plead guilty to another charge is not a favorable termination for purposes of a malicious prosecution claim. Therefore, Carruthers has not alleged a favorable termination for the lesser DWI-related charges because those were dismissed as part of his guilty plea to the traffic infraction. However, he has adequately stated a favorable termination for the felony DWI charge because the complaint contains no information as to why the state amended the felony to a misdemeanor before the suppression hearing, and thus, it is plausible that the amendment of the felony charge (*i.e.*, its termination) was not part of the negotiated plea disposition. Therefore, the district court erred

27

in dismissing the malicious prosecution claim, to the extent it is based on the felony charge, for lack of a favorable termination.

### i. Assessing Favorable Termination Charge By Charge

The Supreme Court has explained that historically the only "technical prerequisite" for the favorable termination element of a malicious prosecution claim is that "the particular prosecution be disposed of in such a manner that it cannot be revived." *Thompson v. Clark*, 596 U.S. 36, 45 (2022) (internal quotation marks and citation omitted). Thus, "[t]o demonstrate a favorable termination of a criminal prosecution for purposes of [a] Fourth Amendment claim under [Section] 1983 for malicious prosecution, a plaintiff need only show that his prosecution ended without a conviction." *Id.* at 39. In other words, "the prosecution" must "end[] in the defendant's favor." *Id.* at 47. For example, a plaintiff could sustain a malicious prosecution claim not only if he secured "an acquittal or a dismissal accompanied by some affirmative indication of innocence," *id.* at 46, but also if "the prosecutor abandoned the criminal case or the court dismissed the case without providing a reason," *id.* at 45.

Trooper Colton suggests that, under *Thompson*, a plaintiff cannot state a Fourth Amendment malicious prosecution claim unless the entire prosecution

ended without any conviction. We disagree. As the Third Circuit has correctly observed, "*Thompson* did not address whether a proceeding can ever terminate in a plaintiff's favor when the prosecution did not end without a conviction on every charge." *Alburg v. Jones*, No. 21-2580, 2023 WL 2823895, at *3 n.13 (3d Cir. Apr. 7, 2023). Moreover, on this issue, we have held that, similar to the probable-cause assessment for a malicious prosecution claim, the favorable termination element should generally be assessed charge by charge when a plaintiff was not convicted on all of the charges. *See, e.g.*, *Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989). For example, in *Janetka*, we held that, where a plaintiff was convicted at trial of disorderly conduct but acquitted of resisting arrest, the favorable termination requirement was satisfied for the resisting arrest charge because he "was charged with two distinct offenses involving distinct allegations" and "[t]he elements of each charge [were] different; neither charge [was] a lesser included offense of the other." *Id.* We emphasized that, under the circumstances in *Janetka*, "[t]o hold that an acquittal does not constitute a favorable termination would be particularly inappropriate" because "the charge for which [the plaintiff] was acquitted [*i.e.*, a misdemeanor] was more serious than the one for which he was convicted [*i.e.*, a violation]." *Id.*

29

At least three sister circuits have also analyzed the favorable termination element with respect to each individual charge. *See Laskar v. Hurd*, 972 F.3d 1278, 1295 (11th Cir. 2020) ("[T]he favorable-termination element requires only that the criminal proceedings against the plaintiff formally end in a manner not inconsistent with his innocence on at least one charge that authorized his confinement."); *Brown v. Louisville-Jefferson Cnty. Metro Gov't*, 135 F.4th 1022, 1032-33 (6th Cir. 2025) (same); *Jones v. Grill*, No. 21-2091, 2024 WL 3423707, at *2 & n.4 (3d Cir. July 16, 2024) (same).[6]

To be sure, there has been some tension in our own caselaw on this issue. *See, e.g.*, *Barnes v. City of New York*, 68 F.4th 123, 128 (2d Cir. 2023) (holding that the plaintiff failed to establish the favorable termination element where he was

---

[6] Several district courts outside this Circuit have also adopted this same approach. *See, e.g.*, *Wall v. Gulledge*, No. 22-cv-31, 2025 WL 976703, at *11 (M.D.N.C. Mar. 31, 2025) ("While there appears to be an absence of binding authority in North Carolina on this issue, the Second Circuit has reasoned persuasively that when multiple charges are brought against one defendant and are resolved by distinct dispositions—some that qualify as 'favorable termination' and some that do not—the defendant may proceed with a malicious prosecution claim regarding the charges that do qualify." (citing *Janetka*, 892 F.2d at 190)); *Baranchik v. City of Redondo Beach*, No. CV 10-6870, 2011 WL 13217545, at *3 (C.D. Cal. Mar. 29, 2011) (adopting an approach by which "acquittal on fewer than all criminal charges may satisfy the favorable termination element if the charges on which the plaintiff was acquitted arise from a different course of conduct than the charges on which the plaintiff was convicted"); *Cloaninger v. McDevitt*, No. 106-cv-135, 2006 WL 2570586, at *10 (W.D.N.C. Sept. 3, 2006) (same).

acquitted of the drug-sale charge but convicted of the drug-possession charge);

*DiBlasio v. City of New York*, 102 F.3d 654, 658–59 (2d Cir. 1996) (same).[7]  However,

importantly, *Chiaverini* provides additional support for the charge-by-charge

approach that we articulated in *Janetka*.  Although *Chiaverini* endorsed the charge-

by-charge analysis only for purposes of the probable cause element, it contains

expansive language that applies with equal force to the favorable termination

element.  In *Chiaverini*, the Supreme Court held that, where a plaintiff faces

multiple charges, only some of which are valid, "[t]he valid charges do not create

a categorical bar" that would "insulate the official [prosecuting the charges] from

a Fourth Amendment malicious-prosecution claim relating to the invalid

---

[7] Nevertheless, both *Barnes* and *DiBlasio* can be distinguished from *Janetka* on the ground that, in those cases, we concluded that the two charges at issue (namely, drug sale and drug possession) were not sufficiently distinct from each other.  Indeed, in *DiBlasio*, we explained that we were not concerned, under the particular circumstances of that case, "about the possibility of a prosecutor securing an indictment for an easily provable minor offense and adding to it more serious charges with the hope that proof of probable cause on the lesser charge would insulate the prosecutor from liability for malicious prosecution on the unproved serious ones."  102 F.3d at 658.  As we noted, this was because, among other reasons, both charges at issue there were felonies.  *Id*. at 659. Notwithstanding this distinction, the concurrence in *DiBlasio* expressed concern that the majority decision was in tension with the reasoning in *Janetka* because "the lesser charge of possession does not necessarily bar [the plaintiff's] malicious prosecution claim as to the *more serious charge* of trafficking, on which he was acquitted."  *Id*. (emphasis added) (Jacobs, J., concurring in the judgment).  In any event, neither *Barnes* nor *DiBlasio* undermine the binding precedent established in *Janetka* that courts are generally required to conduct a charge-by-charge analysis for the favorable termination element.

charge[.]" 602 U.S. at 558–59. Thus, the Court explained, "[c]onsistent with both the Fourth Amendment and traditional common-law practice, courts should evaluate suits like Chiaverini's [(that is, a malicious prosecution claim under the Fourth Amendment)] charge by charge." *Id.* at 562. The reasoning in *Chiaverini* strongly suggests that the favorable termination element, like the probable cause element, should generally be analyzed charge by charge. Indeed, were the favorable termination element assessed differently than the probable cause element, "the bringing of one valid charge in a criminal proceeding," which alone resulted in an unfavorable disposition for the criminal defendant, could impermissibly "categorically preclude" a malicious prosecution claim predicated on other invalid charges that allegedly lacked probable cause and were favorably terminated. *Id.* at 563. In other words, if we were to hold otherwise, "an officer with probable cause as to a lesser offense could tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense [and the likely conviction resulting therefrom] would insulate him from liability for malicious prosecution on the other offenses." *Posr*, 944 F.2d at 100. That is precisely the circumstance that the rule established in *Janetka* seeks to avoid.

Therefore, we reiterate that, consistent with our precedent in *Janetka* and the analytical framework set forth in *Chiaverini*, courts must engage in a charge-by-charge approach in determining whether the favorable termination element is satisfied for a malicious prosecution claim.

### ii. Favorable Termination in the Guilty Plea Context

We must next determine how to apply the charge-by-charge approach in the context of a guilty plea, namely, when a plaintiff pled guilty to one charge and the other charges were dismissed pursuant to that plea disposition. In resolving this question, we look to "common-law principles governing malicious-prosecution suits when [Section] 1983 was enacted." *Chiaverini*, 602 U.S. at 563. The Supreme Court has recognized that a Fourth Amendment malicious prosecution claim, like the one here, is distinct from, but analogous to, a common-law malicious prosecution claim. *See Thompson*, 596 U.S. at 43; *see also Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003) (noting that a malicious prosecution claim under Section 1983 is substantially the same as a claim for malicious prosecution under state law). Accordingly, "elements and rules" of a Section 1983 malicious prosecution claim, including whether to apply a charge-by-charge analysis in the guilty-plea context, are "shaped by common-law tort principles, against whose backdrop

33

[Section] 1983 was enacted." *Chiaverini*, 602 U.S. at 561; *see also Thompson*, 596 U.S. at 43 ("To determine the elements of a constitutional claim under [Section] 1983, this Court's practice is to first look to the elements of the most analogous tort as of 1871 when [Section] 1983 was enacted, so long as doing so is consistent with the values and purpose of the constitutional right at issue." (internal quotation marks and citation omitted)).

Trooper Colton argues that, even assuming *arguendo* the charge-by-charge approach applies to the favorable termination element, our precedent in *Janetka* only requires that such an approach be applied where a plaintiff has been acquitted and convicted on different charges after trial, but not where charges have been dismissed as part of a guilty plea disposition, because, at common law, proceedings that have ended by way of compromise were not considered to have ended in the plaintiff's favor. *See* Appellees' Br. at 20–21; Appellees' 28(j) Ltr. at 8. Carruthers, on the other hand, suggests that the DWI-related charges that were dismissed as part of his guilty plea to the traffic infraction satisfy the favorable termination requirement, especially in light of *Chiaverini* and *Thompson*. *See* Appellant's Br. at 9; Appellant's 28(j) Ltr. at 4–5.

We have previously held that a dismissal of a charge as part of a plea disposition does not satisfy a malicious prosecution claim's requirement for favorable termination. *See Poventud v. City of New York*, 750 F.3d 121, 131 (2d Cir. 2014) (en banc) ("[I]t is hornbook law that where charges are withdrawn or the prosecution is terminated by reason of a compromise into which the accused has entered voluntarily, there is no sufficient termination in favor of the accused." (internal quotation marks and citation omitted)); *Murphy v. Lynn*, 118 F.3d 938, 949 (2d Cir. 1997) ("The prevailing view is that if the abandonment was the result of a compromise to which the accused agreed, or an act of mercy requested or accepted by the accused, . . . it is not a termination in favor of the accused for purposes of a malicious prosecution claim.").

Nothing in *Chiaverini* undermines that precedent. Indeed, as noted above, *Chiaverini* instructs courts to refer to the common law, and our precedent is entirely consistent with the historical common-law principle that "where the proceeding has been terminated without regard to its merits or propriety by agreement or settlement of the parties or solely by the procurement of the accused as a matter of favor or as the result of some act, trick[,] or device preventing action and consideration by the court, there is no such termination as may be availed of for

the purpose of [a malicious prosecution] action." *Halberstadt v. N.Y. Life Ins. Co.*, 194 N.Y. 1, 11 (1909); *see also Craig v. Ginn*, 48 A. 192, 194 (Del. 1901) ("[T]he rule seems to be well settled that, where the termination of a prosecution has been brought about by the procurement of the party prosecuted, or by compromise and agreement of the parties, then an action for malicious prosecution cannot be maintained.") (collecting cases); *Mayer v. Walter*, 64 Pa. 283, 287 (1870) ("[W]hen the proceeding has been ended by a compromise, it debars the defendant from any actions for damages."); *accord* Restatement (Second) of Torts § 660(a) (1977) (explaining that a "termination of criminal proceedings in favor of the accused other than by acquittal is not a sufficient termination to meet the requirements of a cause of action for malicious prosecution if the charge is withdrawn or the prosecution [is] abandoned pursuant to an agreement of compromise with the accused."). Common-law courts have reasoned that a proceeding that ends in compromise does not satisfy the favorable termination element because an "agreement or settlement of the parties" (as opposed to, for example, the unexplained abandonment of the prosecution) does not allow for the inference that the prosecution "lack[ed] a reasonable ground for [the defendant's] prosecution." *Halberstadt*, 194 N.Y. at 11; *see Mayer*, 64 Pa. at 287 ("That the

determination must be such as does not admit a reasonable cause for the prosecution; as if a pardon be pleaded which admits in some sort guilt, however is quitting the vindication of innocence, or justification, which admits the fact, and consequently reasonable cause of complaint." (internal quotation marks and citation omitted)).

Our precedent concerning favorable termination in the guilty-plea context, supported by historical common-law principles, is also consistent with *Thompson*, which, as explained above, held that a "plaintiff need only show that his prosecution ended without a conviction," 596 U.S. at 39, and that this could occur if "the prosecutor abandoned the criminal case or the court dismissed the case without providing a reason," *id.* at 45. In *Thompson*, the plaintiff was arrested and charged with obstructing governmental administration and resisting arrest, after he attempted to deny emergency medical and law enforcement personnel responding to a 911 call entrance to his apartment. *Id*. at 40. The state eventually dismissed the charges, and a trial judge dismissed the case. *Id.* Critically, "[t]he prosecutor did not explain why she sought to dismiss the charges, nor did the trial judge explain why he dismissed the case." *Id.*

By contrast, a negotiated guilty plea ostensibly provides an explanation for why charges were dismissed. It is the result of a bargaining process in which the parties exchange the dismissal of certain charges for a conviction on others to resolve a criminal proceeding. *See Rothstein v. Carriere*, 373 F.3d 275, 287 (2d Cir. 2004) ("[S]uch a termination extinguishes a malicious prosecution claim—not because the defendant has admitted guilt, but because it is a bargained-for dismissal of the criminal case." (internal citation omitted)); *see also* Restatement (Second) of Torts § 660, cmt. c (explaining that, "[h]aving bought peace" by entering a plea agreement, a plaintiff "may not thereafter assert that the proceedings have terminated in his favor"). Thus, unlike in *Thompson*, where the prosecution provided no reason at all for its decision to dismiss charges, by entering into a plea agreement, the prosecution has indicated that it made a calculated decision to dismiss certain charges in order to secure a conviction on another, thereby ending the criminal proceedings, and that the defendant has agreed to that compromise. Accordingly, we hold that, in analyzing the favorable termination element charge by charge, there is no favorable termination where the charge or charges forming the basis of the malicious prosecution claim were dismissed or otherwise terminated as part of a negotiated plea disposition.

38

A conclusion to the contrary would threaten to disturb the incentive structures underlying plea agreements and the purpose of the favorable termination rule.  The Supreme Court has recognized that plea agreements "are important components of this country's criminal justice system.  Properly administered, they can benefit all concerned." *Bordenkircher v. Hayes*, 434 U.S. 357, 361–62 (1978) (internal quotation marks and citation omitted).  We have explained that, among those benefits, "the defendant gains reasonable certainty as to the extent of his liability and punishment, and the [g]overnment achieves a conviction without the expense and effort of proving the charges at trial beyond a reasonable doubt."  *United States v. Rosa*, 123 F.3d 94, 97 (2d Cir. 1997).  Further, prosecutors in our system have been afforded "considerable discretion" to pursue plea agreements, including the discretion to determine "whether to enter into plea bargains and the terms on which they will be established."  *Young v. U.S. ex. rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987); *see United States v. Mishoe*, 241 F.3d 214, 220–21 (2d Cir. 2001) (explaining that prosecutors have "substantial discretion" to determine "what plea agreements to accept").  We have emphasized that a prosecutor's decision to enter into a plea deal can be based on a range of factors— such as "the strength of the case, the prosecution's general deterrence value, [and]

39

the [g]overnment's enforcement priorities"—that could impact bargaining and reasonably lead to the dismissal of certain charges to secure a conviction on others. *United States v. Mitchell*, 358 F.3d 216, 219 (2d Cir. 2004) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). Given this discretion, and the careful weighing of factors that go into plea deals, a prosecutor should not be concerned with liability for malicious prosecution in deciding whether to dismiss a charge as part of a plea agreement when such a decision is part and parcel of the normal give-and-take of plea bargaining. Such concerns could disincentivize the dismissal of charges, which, in turn, could lead to fewer plea agreements, rendering an "essential component" of our criminal system less effective. *Santobello v. New York*, 404 U.S. 257, 260 (1971); *cf. Wayte*, 470 U.S. at 607 (explaining that reviewing the exercise of prosecutorial discretion "threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness").

Although we hold that any charges that are dismissed as part of a plea disposition in a criminal case cannot satisfy the favorable termination element, we conclude that charges dismissed or terminated apart from the negotiated plea disposition can. In other words, even if a guilty plea has been entered as to certain

40

charges, a favorable termination can be established for another charge, dismissed in the same criminal case, if the dismissal was unrelated to the plea disposition. For example, if a plaintiff obtained a dismissal from the criminal court on a murder charge as a result a pre-trial motion (or even a voluntary dismissal by the prosecutor on that charge that was unrelated to any plea deal) but later pled guilty to a misdemeanor charge as part of a negotiated disposition in the case, that plaintiff could satisfy the favorable termination requirement on the murder charge for purposes of a malicious prosecution claim. That conclusion is not only consistent with our decision in *Janetka* but also follows from the Supreme Court's decision in *Thompson*, which made clear that a favorable termination does not require "an acquittal or a dismissal accompanied by some affirmative indication of innocence." 596 U.S. at 46.

*        *        *

In sum, a charge dismissed as part of a plea disposition in a criminal case cannot satisfy the favorable termination element. But a charge dismissed apart from a negotiated disposition can (as outlined in *Janetka*) satisfy the favorable termination element.

### iii. Carruthers's Malicious Prosecution Claim

Applying these holdings here, we conclude that the dismissal of the DWI-related charges pursuant to Carruthers's guilty plea to the traffic infraction are not favorable terminations because they were dismissed as a part of a negotiated disposition with the District Attorney's Office.[8] However, we hold that Carruthers has established favorable termination for the felony charge under VTL Section 511(3)(a) because that charge was amended to a misdemeanor (a violation of VTL Section 511(1)(a)) *before* the state reached a plea agreement with Carruthers—indeed, before the state proceeded with the suppression hearing—and nothing in the complaint (or documents attached thereto) indicates why the state made such a decision. Indeed, in granting the motion to suppress, the city court referenced the hearing testimony and noted: "Colton was cross-examined about her motive

---

[8] Although Carruthers does not contest that the DWI-related charges that were dismissed in connection with his guilty plea were the product of a negotiated disposition with the prosecutor, he suggests that those dismissed charges still can form the basis of his malicious prosecution claim because he never signed a general release with respect to those dismissed claims. We disagree. Our precedents do not require an executed general release or a written plea agreement to establish that a claim dismissed as part of a guilty plea disposition is not a favorable termination. As we explained above, plea deal dismissals are a "bargained-for dismissal of the criminal case." *Rothstein*, 373 F.3d at 287. The bargain defeats a malicious prosecution claim as to those charges because it provides an explanation for the termination that is not "favorable" to the defendant. The bargain is apparent from the fact of the plea deal itself and does not need to be memorialized in any particular document.

in filing an unsubstantiated felony Aggravated Unlicensed Operator complaint against [Carruthers] instead of a misdemeanor complaint, such enhanced charge causing [Carruthers] to be held in jail for arraignment. The complaint was later amended to a misdemeanor by the [state]." App'x at 38. On appeal, Trooper Colton points to nothing in the complaint or public records from Carruthers's criminal proceeding that explains the basis for the voluntary termination of the felony charge by the state.

Without any alleged facts that explain the state's charging decision, it is entirely plausible that the felony—which is part of Carruthers's malicious prosecution claim—was not dismissed pursuant to any plea disposition between the parties, especially because it was terminated prior to the suppression hearing. *See Thompson*, 596 U.S. at 45 (explaining that a plaintiff has a viable malicious prosecution claim when the prosecutor "abandon[s] the criminal case"). Moreover, the fact that the felony charge was terminated by way of an amendment of the charge, rather than a formal dismissal, is immaterial for purposes of the favorable termination element. Amending the felony to a misdemeanor effectively "marked [the] end to further proceedings against the defendant" on the felony charge. *Id.* (internal quotation marks and citation omitted). Finally, the felony

43

charge (driving under the influence while a driver's license is suspended or revoked because of a previous DWI conviction, in violation of VTL Section 511(3)(a)) is sufficiently distinct from the charge of conviction—the traffic infraction—not only as to its elements, but also as to the seriousness of the offense, so as to be a permissible basis for the malicious prosecution charge under our framework in *Janetka*.[9]

Accordingly, drawing all inferences in Carruthers's favor at this stage of the litigation, it is plausible that the voluntary termination of the felony charge was entirely unrelated to Carruthers's subsequent guilty plea to the traffic violation, and Carruthers has adequately alleged that the proceedings as to the felony charge terminated in his favor. The district court therefore erred in dismissing the malicious prosecution claim as to the felony charge.

### III.     Fabrication of Evidence Claim

Carruthers argues that the district court erred by dismissing his fabrication of evidence claim for failing to adequately allege that Trooper Colton intentionally fabricated evidence. We agree and vacate the district court's dismissal of

---

[9] For the same reason, the circumstance here is distinguishable from both *Barnes* and *DiBlasio*, where the two charges at issue in each case were both felonies.

Carruthers's fabrication of evidence claim because the district court improperly weighed the evidence on that claim at the motion to dismiss stage. When the allegations in the complaint are properly construed in the light most favorable to Carruthers (including drawing all reasonable inferences in his favor), he has adequately pled a plausible claim of fabrication of evidence.

To succeed on a fabricated evidence claim, a plaintiff must establish that "an (1) investigating official (2) fabricate[d] information (3) that is likely to influence a jury's verdict, (4) forward[ed] that information to prosecutors, and (5) the plaintiff suffer[ed] a deprivation of life, liberty, or property as a result." *Garnett v. Undercover Officer C0039*, 838 F.3d 265, 279 (2d Cir. 2016). "A [Section] 1983 plaintiff may sue for denial of the right to a fair trial based on a police officer's fabrication of information . . . when the information fabricated is the officer's own account of his or her observations of alleged criminal activity, which he or she then conveys to a prosecutor." *Barnes*, 68 F.4th at 129 (internal quotation marks and citation omitted). "The fabrication element requires only that the defendant knowingly make a false statement or omission." *Ashley*, 992 F.3d at 143.

In his complaint, Carruthers alleges two instances of fabrication: (1) Trooper Colton filed a DWI bill of particulars knowing that it contained false statements

about the field sobriety tests; and (2) Trooper Colton knowingly misrepresented in the felony complaint that Carruthers had a prior conviction or suspension of his driver's license for a DWI-related offense which thereby made him eligible for a felony charge.

As an initial matter, the district court erred in considering, at the motion to dismiss stage, whether Carruthers's allegations were contradicted by portions of Trooper Colton's testimony during the suppression hearing. In particular, the district court found that Trooper Colton's testimony that "she made a mistake of charging Plaintiff with a [felony]" contradicted Carruthers's allegations that Trooper Colton intentionally charged him with a felony to prevent him from being released and getting an independent blood test. *Carruthers*, 2021 WL 5585798, at *4 (alterations adopted) (internal quotation marks and citation omitted). By crediting Trooper Colton's testimony that the false statements forming the basis for the felony complaint were mistaken, rather than intentional, as Carruthers alleged, the district court engaged in an impermissible credibility determination at the motion to dismiss stage. *See Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020) ("[T]he court's task is to assess the legal feasibility of the complaint; it is not to assess the weight of the evidence that might be offered on either side."). As

46

we have emphasized, in deciding a motion to dismiss, a court "may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012); *see also Palin v. N.Y. Times Co.*, 940 F.3d 804, 812 (2d Cir. 2019) (vacating the grant of a motion to dismiss because the district court "relied on credibility determinations not permissible at any stage before trial").

Moreover, the district court erred in determining that Carruthers's allegations that Trooper Colton intentionally fabricated evidence were conclusory. The complaint alleges with specificity how the DWI bill of particulars contained knowingly false statements regarding how Trooper Colton conducted the field sobriety tests and the results of those tests. For example, the bill of particulars indicates that Trooper Colton administered a horizontal gaze nystagmus test. However, as the complaint alleges, Trooper Colton could not confirm whether she, in fact, administered this test, as opposed to a different type of nystagmus test, and, in any event, assuming she did administer the horizontal nystagmus test, the complaint further alleges that Trooper Colton did it improperly and inconsistently with her training. As for the walk-and-turn and one-leg-stand tests, the bill of

47

particulars indicates that Carruthers displayed all the factors necessary to fail each of those tests, but the complaint alleges, and the suppression hearing testimony indicates, that Trooper Colton could only testify that Carruthers displayed three of the eight factors required for failure of the walk-and-turn test and three of the four factors required for failure of the one-leg-stand test. Carruthers further alleges that he was alert and responsive during his interaction with Trooper Colton and passed each of the field sobriety tests.

In addition, the complaint specifically alleges that Trooper Colton made false statements in the felony complaint when she swore that: (1) she had identified the prior conviction for a VTL Section 1192 offense during an electronic search of N.Y. D.M.V. records; and (2) Carruthers orally admitted to her that he had this prior conviction. Indeed, the complaint alleges that neither a background check run shortly after Carruthers was arrested nor N.Y. D.M.V. records show that he previously had his license suspended for any violation of New York's DWI laws or that he had a prior VTL Section 1192 conviction. The complaint also alleges that Trooper Colton's CPL Notice reported that "she did not have any conversations with Plaintiff about [a prior] arrest." App'x at 15.

48

Not only were these allegations not conclusory, but, construed favorably to Carruthers, they were also sufficient to support a plausible claim that filing this false information was intentional. Although it is plausible that Trooper Colton misread the N.Y. D.M.V. records or misremembered having a conversation with Carruthers about a prior DWI-related conviction, it is also plausible that Trooper Colton's statements on the felony complaint regarding the source of her knowledge of the prior conviction were intentionally false. *See Anderson News, L.L.C.*, 680 F.3d at 185 ("The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion."). Furthermore, Carruthers has articulated a specific theory as to why Trooper Colton's false statements regarding the prior conviction were intentional—the prior conviction was necessary to charge him with a felony to prevent him from being immediately released and would thereby thwart his ability to get an independent blood test to challenge the results of the breathalyzer test. The complaint further supports this theory by alleging that Trooper Colton told Carruthers at the scene of the traffic stop that he would be processed at the station and then released, prior to Carruthers stating he wanted an independent blood test; accepting that allegation as true, it is a reasonable inference that

49

Trooper Colton did not intend to charge him with a felony at the scene of the traffic stop.

The plausibility of the allegations that Trooper Colton knowingly and intentionally falsified evidence of Carruthers's intoxication and a prior DWI-related conviction or license suspension is further supported by the suppression hearing. There, in the middle of Trooper Colton's cross-examination about her motive and evidence to file the felony complaint, the city court adjourned the hearing because Trooper Colton requested "to talk to the ADA" when Carruthers's attorney suggested that she might be committing perjury. App'x at 39. When the hearing resumed, Trooper Colton explained that applying the VTL "sometimes gets confusing" and that she made a "human error . . . not perjury." *Id.* The city court determined that Trooper Colton's testimony regarding probable cause was "neither reliable nor credible" and that the excerpts of Trooper Colton's testimony, outlined in the court's decision, "provide[] examples but do[] not adequately capture Colton's *equivocation*, failure of memory, and *lack of candor*." App'x at 40 (emphases added).

In the alternative, Trooper Colton argues that Carruthers failed to adequately plead two other elements of the fabrication of evidence claim, namely,

50

that Trooper Colton forwarded the information to prosecutors and that the fabricated information would likely influence a jury's verdict. We disagree. At this stage, it can be reasonably inferred from the prosecution itself, including the decision to call Trooper Colton as a witness at the suppression hearing, that Trooper Colton forwarded to the prosecution the DWI bill of particulars and felony complaint containing the allegedly false information. Moreover, that information, regarding both the field sobriety tests and the prior conviction, was critical to the prosecution's ability to satisfy the elements of the felony DWI charge—namely, that Carruthers (1) was driving under the influence and (2) had a suspended or revoked license because of a previous DWI conviction, *see* VTL § 511(3)(a)—and thus, Carruthers has plausibly alleged that it would have been likely to influence the outcome of the trial.

In sum, the district court erred in concluding, at the motion to dismiss stage, that Carruthers's allegations were conclusory and that he failed to plausibly allege that Trooper Colton intentionally fabricated evidence. Therefore, we vacate the district court's decision to dismiss Carruthers's fabrication of evidence claim.

51

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court as to the false arrest claim and the malicious prosecution claim insofar as it relates to the DWI-related charges dismissed as part of the plea agreement, we **VACATE** the judgment of the district court as to the malicious prosecution claim only as it relates to the terminated felony charge and the fabrication of evidence claim, and we **REMAND** for further proceedings consistent with this opinion.